FILED
United States Court of Appeals
Tenth Circuit

March 6, 2018

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
———————————————————

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

RICHARD ANTHONY TRENT,

     Defendant - Appellant.

No. 17-6041

———————————————————

**Appeal from the United States District Court
for the Western District of Oklahoma
(Nos. 5:12-CR-00053-HE-1 and 5:16-CV-00142-HE)**
———————————————————

Howard A. Pincus, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him on the briefs), Denver, Colorado, for Defendant - Appellant.

Timothy W. Ogilvie, Assistant United States Attorney (Mark A. Yancey, United States Attorney, with him on the brief), Oklahoma City, Oklahoma, for Plaintiff - Appellee.
———————————————————

Before **HOLMES**, **MATHESON**, and **MORITZ**, Circuit Judges.
———————————————————

**MATHESON**, Circuit Judge.
———————————————————

Richard Trent was convicted for being a felon in possession of a firearm in

violation of 18 U.S.C. § 922(g)(1).  His sentence was enhanced under the Armed Career

Criminal Act ("ACCA") to 196 months in prison.  On direct appeal, Mr. Trent argued

that the ACCA enhancement should not have applied to him because his past conviction

under Oklahoma's general conspiracy statute was not a serious drug offense under the ACCA. We rejected this argument and affirmed. *United States v. Trent*, 767 F.3d 1046, 1063 (10th Cir. 2014) ("*Trent I*").[1]

Mr. Trent then filed a 28 U.S.C. § 2255 motion to challenge his sentence. While that motion was pending, the Supreme Court decided *Mathis v. United States*, 136 S. Ct. 2243 (2016). In *Mathis,* the Court abrogated one of the two rationales we used to affirm Mr. Trent's sentence. *Id.* at 2251 n.1. Mr. Trent argued that *Mathis* entitled him to relief. The district court denied his motion on several grounds. *United States v. Trent*, No. CIV-16-0142-HE, 2016 WL 7471346 (W.D. Okla. Dec. 28, 2016) ("*Trent II*").[2] The court also granted a certificate of appealability ("COA").

Exercising jurisdiction under 28 U.S.C. § 1291 and 28 U.S.C. § 2253, we affirm the denial of Mr. Trent's § 2255 motion under the law of the case doctrine. Although *Mathis* undercut one of this court's rationales to affirm Mr. Trent's sentence, it did not affect our alternative rationale to affirm.

## I. **BACKGROUND**

### A. *Factual Background*

When Mr. Trent, Lloyd Robinson, and Angela Keller visited Michael Kimberly's home in Geronimo, Oklahoma in the summer of 2012, a neighbor called 911 to report that someone holding a gun outside Mr. Kimberly's house got into a green Volvo and

---

[1] We refer to this court's 2014 decision on Mr. Trent's direct appeal as "*Trent I*."

[2] We refer to the district court's 2016 decision denying his § 2255 motion as "*Trent II*."

drove away. *Trent I*, 767 F.3d at 1048. After an officer stopped the car, he encountered the three individuals, and Mr. Trent was sitting in the back seat. The officer searched the car and found a handgun wedged behind an armrest in the back seat. *Id.* Mr. Robinson was released, but Mr. Trent and Ms. Keller were arrested on account of their prior felony convictions. *Id.*

### B. *District Court Proceedings*

A jury convicted Mr. Trent on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). At sentencing the district court considered whether Mr. Trent's sentence should be enhanced under the ACCA. A § 922(g)(1) conviction generally carries a 10-year maximum sentence, 18 U.S.C. § 924(a)(2), but the ACCA provides for a minimum 15-year sentence if the defendant has three qualifying prior convictions for either a "violent felony" or a "serious drug offense." 18 U.S.C. § 924(e)(1). Mr. Trent admitted that he had two previous convictions that would qualify as serious drug offenses under the ACCA. He argued, however, that his 2007 conviction under Oklahoma's general conspiracy statute did not qualify as a serious drug offense. The district court disagreed and sentenced him to 196 months in prison and five years of supervised release.

### C. *Direct Appeal*

On appeal, Mr. Trent argued that his sentence should not have been enhanced under the ACCA. *Trent I*, 767 F.3d at 1051. This court affirmed.

The panel explained the analytical framework to determine whether Mr. Trent's Oklahoma conspiracy conviction should qualify under the ACCA as a serious drug

3

offense. It said that under the "categorical approach," a sentencing court "looks only at the elements of the statute under which the defendant was convicted" and compares them to the elements in the ACCA statutory definition of "serious drug offense." *Id.* at 1051-52.[3] If those elements "satisfy the definition of serious drug offense in the ACCA," then the conviction qualifies. *Id.* at 1058 (emphasis omitted). A "conviction [under a state statute] qualifies [as an ACCA predicate offense] only if all violations of the statute would qualify, regardless of 'how [the specific] offender might have committed it on a particular occasion.'" *Id.* at 1052 (quoting *Begay v. United States*, 553 U.S. 137, 141 (2008)).

The panel further explained that when the prior conviction statute is "divisible," the court uses the "modified categorical approach" to determine which part of the statute was violated. *Id.* at 1052. A statute is divisible "when it 'sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building *or* an automobile.'" *Id.* (quoting *Descamps v. United States*, 570 U.S. 254, 257 (2013) (emphasis in original)). A court may then "examine[] certain definitive underlying documents to determine which alternative the defendant's conviction satisfied." *Id.* It next applies the categorical approach to the applicable alternative to determine whether the offense is an ACCA predicate.

The *Trent I* panel then began its analysis as follows:

_____

[3] Under the ACCA, a state law conviction counts as a "serious drug offense" if it "involv[es] manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii).

4

> Oklahoma's general conspiracy statute states: 'If two or more persons conspire . . . [t]o commit any crime[,] . . . they are guilty of a conspiracy.' Okla. Stat. Ann. tit. 21, § 421(A) (1999). Obviously, the statute could be violated in many ways that have nothing to do with drugs.

*Id.* (alterations in original). The "difficult" question was whether the statute is divisible and, if so, whether the "modified categorical approach" could identify the nature of the underlying offense. *Id.* For two separate reasons, we decided the statute is divisible and then employed the modified categorical approach.

Under our first rationale, we determined the Oklahoma conspiracy statute is divisible based on a broad understanding of how to apply *Descamps* to the Oklahoma conspiracy statute. As previously noted, the statute makes it a crime for "two or more persons to conspire to commit a crime." The word "crime" refers to the criminal offenses in the Oklahoma criminal code. *Id.* at 1057. The statute therefore can be violated by engaging in numerous types of criminal activity. In *Trent I*, we said that "[b]y cross-referencing the state's criminal code, the general conspiracy statute lays out 'multiple, alternative versions of the crime' of conspiracy, according to what crime provides the conspiracy's object." *Id*. (quoting *Descamps*, 570 U.S. at 262). This cross-referencing produces "alternative statutory phrases," which would be "alternative elements" under *Descamps*, rendering the statute divisible even if the "alternative statutory phrases" are different means to violate the statute rather than elements in the "full" or "traditional sense." *Id.* at 1060-61.[4] Put another way, the *Trent I* court said the conspiracy statute is

---

[4] *Trent I* cited the Supreme Court's decision in *Richardson v. United States* as providing a definition for "traditional element": "[c]alling a particular kind of fact an

5

divisible whether the "alternative statutory phrases" are traditional elements or merely means.

Under our second rationale in *Trent I*, we found "Oklahoma's conspiracy statute is divisible and the modified categorical approach is appropriate" "even if the Supreme Court [in *Descamps*] was using the term *elements* in its traditional sense." *Id.* at 1063. Based on our analysis of Oklahoma case law, the state's uniform jury instructions, and a case about the federal continuing-criminal-enterprise statute, we concluded that a jury must agree unanimously on the object of the conspiracy to convict under the statute. *Id.* at 1061-62. Accordingly, we held the conspiracy statute contained alternative traditional elements and is therefore divisible. *Id.* at 1063.

Under either the first or second rationale, once the *Trent I* court determined the Oklahoma conspiracy statute is divisible, it then could employ the modified categorical approach and examine the record to ascertain the crime underlying Mr. Trent's Oklahoma conspiracy conviction. Because Mr. Trent had pled guilty to "conspiracy to manufacture methamphetamine," the crime categorically fit the ACCA's serious drug offense definition. *Id.* at 1057. We therefore held that Mr. Trent's conspiracy conviction was an ACCA predicate offense. *Id.*

---

'element' carries certain legal consequences . . . [For example,] a jury . . . cannot convict unless it unanimously finds that the Government has proved each element." 526 U.S. 813, 817 (1999).

6

Because Mr. Trent had three ACCA-eligible convictions under either the first or the second rationale, we found that his ACCA sentence enhancement was proper and affirmed. *Id.* at 1063.

### D. *Original Section 2255 Motion and* **Mathis**

Mr. Trent next filed a pro se § 2255 motion challenging his sentence on three grounds. First, he argued that his sentence was unconstitutional under *Johnson v. United States*, 135 S. Ct. 2551 (2015), because that decision's invalidation of the ACCA's residual clause defining violent felony should also apply to the ACCA's definition of serious drug offenses. Second, he alleged his sentence was substantively unreasonable and thus invalid under *Alleyne v. United States*, 570 U.S. 99 (2013), because the judge, rather than a jury, found a fact—his past conviction—that increased his sentence. Third, he argued his appellate counsel was ineffective by failing to amend his direct appeal to account for new relevant case law. Under "Supporting facts" on his first ground, Mr. Trent stated that the Oklahoma general conspiracy statute does not qualify as a predicate for ACCA enhancement. He repeatedly cited *Descamps*.

While Mr. Trent's motion was pending, the Supreme Court decided *Mathis*. In *Mathis*, the Court explicitly abrogated *Trent I*'s first rationale, 136 S. Ct. at 2251 n.1, emphasizing that "elements"—for the purpose of determining a statute's divisibility—should be understood in the traditional sense: "Elements are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction. … At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant. . . ." *Id.* at 2248 (quotation marks omitted). If the alternative statutory phrases

7

are only different "means" of committing the same offense under a statute, that statute is not divisible. *Id.* at 2264. If a sentencing court is "faced with an alternatively phrased statute," it must determine whether the relevant "listed items" are actually elements. *Id.*

*Mathis* offered guidance on how to make the elements-versus-means determination. A state court decision can "definitively answer[ ] the question," or "the statute on its face may resolve the issue." *Id.* When state law does not resolve the question, courts may "peek at the record documents" for help: indictments, jury instructions, plea colloquies, plea agreements, and the like. *Id.* at 2256, 2257 n.7 (quotations and alterations omitted). The Court also noted that "such record materials will not in every case speak plainly," and when they do not, a sentencing judge will not be able to satisfy "*Taylor*'s demand for certainty"[5] when determining whether a defendant was convicted of a[n ACCA] offense." *Id.* at 2257. But, it added, "that kind of indeterminacy should prove more the exception than the rule." *Id.*

### E. *Amended § 2255 Motion and Denial of Motion*

Mr. Trent received appointed counsel, who filed a "Revision to Previously Filed § 2255 Application for Relief" ("revised motion") shortly after *Mathis* was decided. The revised § 2255 motion focused on showing the text of the Oklahoma conspiracy statute did not qualify for ACCA enhancement as a drug offense or a violent felony, and it cited *Descamps* and *Mathis.*

---

[5] *Taylor v. United States*, 495 U.S. 575 (1990), held that a court may apply the categorical approach only to those components of a state crime that were necessary for the conviction of that crime (i.e., facts the jury had to find beyond a reasonable doubt).

8

The district court denied Mr. Trent's § 2255 motion. *Trent II*, No. CIV-16-0142-HE, 2016 WL 7471346 (W.D. Okla. Dec. 28, 2016). It concluded that Mr. Trent's original pro se *Johnson*, *Alleyne*, and ineffective-assistance-of-counsel arguments lacked merit. It also rejected what it construed as Mr. Trent's *Mathis* "claim" because (1) the *Mathis* claim was untimely since it was raised more than a year after his conviction had become final; and (2) the *Mathis* issue had been decided on direct appeal, our disposition of it stood as law of the case, and no exceptions to the law of the case doctrine applied.

The district court also evaluated the "substantive merits of the motion." *Id.* at *3. It found that Oklahoma's conspiracy statute is divisible because the object of a given conspiracy is a traditional element of the crime. The court thus applied the modified categorical approach, determined the elements of Mr. Trent's conspiracy offense to include manufacture of methamphetamine, and compared them with the ACCA's serious drug offense definition to find that the ACCA's definition was satisfied. *Id.* at *4.

The district court accordingly denied Mr. Trent's § 2255 motion to vacate his sentence. It also granted his request for a COA. Mr. Trent timely appealed.

## II. **DISCUSSION**

After describing our standard of review, we address the timeliness of Mr. Trent's *Mathis* claim and conclude, contrary to the district court, that the claim was timely. We then turn to the law of the case and determine that *Trent I*'s second rationale on direct appeal holding that the Oklahoma conspiracy statute is divisible and that Mr. Trent's prior conviction is a serious drug offense under the ACCA is controlling in this § 2255 proceeding. No law of the case exception applies because *Mathis* was not an

9

"intervening change" in controlling law with respect to the second rationale in *Trent I*. We therefore affirm on this ground and do not review the district court's merits analysis of the *Mathis* claim.

## A. *Standard of Review*

On an appeal arising from "the denial of a § 2255 motion for post-conviction relief, we review the district court's findings of fact for clear error and its conclusions of law de novo." *United States v. Cruz*, 774 F.3d 1278, 1284 (10th Cir. 2014) (quoting *United States v. Rushin*, 642 F.3d 1299, 1302 (10th Cir. 2011)). Whether a prior conviction constitutes a "serious drug offense" under the ACCA presents a question of statutory interpretation, and we review the district court's conclusion de novo. *United States v. Johnson*, 630 F.3d 970, 975 (10th Cir. 2010).

## B. *Timeliness of* **Mathis** *Claim*

The district court held that Mr. Trent's *Mathis* claim was untimely because he attempted to add it after the one-year statute of limitations had expired. *Trent II*, 2016 WL 7471346, at \*3; *see* 28 U.S.C. § 2255(f). The court also said that "assertion of an additional claim may also implicate the rule against second and successive petitions." *Id.* at \*3 n.3. Although we ultimately affirm the district court's denial of relief, we disagree with its timeliness analysis.

### 1. **Additional Procedural History**

Shortly after he was appointed, Mr. Trent's counsel filed a "Revision to Previously Filed § 2255 Application for Relief" ("revised motion"), calling it "[a] supplement to [Mr. Trent's] previously filed petition" and stating its purpose was "to amplify

10

specifically the application of the state conspiracy conviction to enhance the sentence." ROA, Vol. 1 at 44.  It analyzed the Oklahoma conspiracy statute, described the categorical approach, drew comparisons with the federal conspiracy statute, and concluded that Mr. Trent was previously convicted under a "general felony" statute and not a drug offense statute.  *Id.* at 44-51.  Only on page 8 of this 12-page document was *Mathis* mentioned:  "To attempt to determine the nature of the conspiracy by looking to its object violates . . . *Descamps* . . . and more recently . . . *Mathis*.  *Id.* at 51.  *Mathis* was not otherwise cited or discussed.

In its response to the revised motion, the Government argued that Mr. Trent could not use *Mathis* to reopen the issue settled in his direct appeal because *Mathis* did not contradict one of the rationales this court relied on to hold that his prior conviction was a serious drug offense.  *Id.* at 61-62.  It is not clear whether the government regarded the revised motion as an attempt to amend the original by adding a *Mathis* claim or simply to bring *Mathis* to the district court's attention as supplemental authority.

In its order denying relief, the district court regarded the revised motion as having raised a *Mathis* claim:  "[Mr.] Trent's final claim is based on *Mathis*."  *Trent II*, WL 7471346, at *2.  The court said Mr. Trent's new counsel "sought leave to file an amended motion"; that the "motion for leave referenced *Johnson*, but did not mention *Mathis*"; and that the court "specifically directed . . . submission of an amended claim under *Johnson*, with no mention of *Mathis*."  *Id.* at *3.  It said *Mathis* first appeared in the "amended motion."  *Id*.  For these reasons, the court concluded that "the *Mathis* claim was raised after expiration of the one year limitations period."  *Id.*

11

2. **Legal Background**

A habeas petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. Fed. R. Civ. P. 15(c)(1)(B) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." We review de novo whether Mr. Trent's *Mathis* claim related back to his original § 2255 motion. *See Garrett v. Fleming*, 362 F.3d 692, 695 (10th Cir. 2004).

In *Mayle v. Felix*, 545 U.S. 644 (2005), the Supreme Court held that "[a]n amended habeas petition . . . does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650. Although this court said that relation back is proper "only if . . . the proposed amendment does not seek to add a new claim or to insert a new theory into the case," *United States v. Espinoza-Saenz*, 235 F.3d 501, 505 (10th Cir. 2000) (quoting *United States v. Thomas*, 221 F.3d 430, 431 (3d Cir. 2000)),[6] *Mayle* clarified that, "So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." 545 U.S. at 664.[7]

---

[6] The *Thomas* decision excluded from relation back only "an entirely new claim or new theory of relief." 221 F.3d at 436 (emphasis added).

[7] The Court cited and quoted 3 James Wm. Moore, et al., Moore's Federal Practice ¶ 15.19[2] (3d ed. 2004), for the proposition that "relation back [is] ordinarily allowed 'when the new claim is based on the same facts as the original pleading and only changes the legal theory.'" 545 U.S. at 664 n.7.

Moreover, in *Espinoza-Saenz*, we said the proposed amendment there attempted to add a claim that was "totally separate and distinct, in both time and type from those raised in [the] original motion." 235 F.3d at 505 (quotation marks omitted); *see also Milton v. Miller*, 812 F.3d 1252, 1264 (10th Cir. 2016) (holding habeas petitioner's ineffective assistance of trial counsel claim "ha[d] a dramatically different factual predicate" than his original ineffective assistance of appellate counsel claim and therefore could not relate back).

3. **Analysis**

The district court thought Mr. Trent attempted to raise a new claim under *Mathis* that was untimely. We conclude otherwise—the *Mathis* claim related back to his original § 2255 motion and therefore was timely.

The revised motion focused on the text of the statute and argued that Mr. Trent's prior conviction did not qualify as an ACCA predicate drug offense. To hold otherwise, it contended, would violate *Descamps* and *Mathis*, mentioning the latter only in passing as newly decided. The revised motion provided additional analysis to support the pro se original motion, including citation of *Mathis* to bolster *Descamps*, which Mr. Trent had repeatedly cited in his original motion. *See* ROA, Vol. 1 at 31, 34, 41, and 42. Although the pro se original motion and the revised motion may not completely overlap, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quotations and citations omitted).

13

The reference to *Mathis* in the revised motion was "tied to a common core of operative facts" underlying the original motion—Mr. Trent's prior conviction under the Oklahoma conspiracy statute and its fit with the ACCA's definition of serious drug offense. *Mayle*, 545 U.S. at 664.[8] The facts supporting the *Mathis* claim did not "differ in both time and type from those the original pleading set forth." *Id.* at 650. The mention of *Mathis* in the revised motion was not "totally separate and distinct, in both time and type from [the claims] raised in [the] original motion." *Espinoza-Saenz*, 235 F.3d at 505 (quotation omitted). The *Mathis* reference in the revised motion related back to the original § 2255 motion, and the *Mathis* claim was thus timely.

As to the district court's observation about "second or successive § 2255 petitions," *Trent II*, WL 7471346 at *3 n.3, if the court thought the revised motion should be construed as a second or successive motion, we would disagree and instead concur with our sibling circuits that a pre-judgment request to add a claim to a § 2255 motion is not a second or successive motion; it is a motion to amend and should be considered under Federal Rule of Civil Procedure 15. *See Clark v. United States*, 764 F.3d 653, 658-60 (6th Cir. 2014); *United States v. Sellner*, 773 F.3d 927, 931 (8th Cir. 2014); *Littlejohn v. Artuz*, 271 F.3d 360, 362-63 (2d Cir. 2001); *Johnson v. United States*, 196 F.3d 802, 804-05 (7th Cir. 1999); *see also* Brian R. Means, Federal Habeas Manual § 11:69 (2017) ("Before judgment, the petitioner may amend his petition to include additional claims

---

[8] In addition to the references to *Descamps*, Mr. Trent's pro se § 2255 motion stated under the "Supporting facts" section of "Ground One": "Oklahomas[sic] 'General Conspiracy Statue[sic]' does not qualify as predicate for ACCA enhancement." ROA, Vol. 1 at 13.

14

(subject to the restrictions imposed by Federal Rule of Civil Procedure 15). The amended petition does not count as an application for purposes of the 'second or successive' petition rule.").

The district court more likely meant that if an amendment asserts a claim that is deemed untimely, it would need to be pursued in a second or successive petition, and the district court would lack jurisdiction to consider it absent this court's authorization. *See* 28 U.S.C. § 2255(h) (requiring authorization from the circuit court to invoke federal jurisdiction over a second or successive § 2255 motion); *United States v. Wetzel-Sanders*, 805 F.3d 1266, 1269 (10th Cir. 2015) (explaining that in the absence of circuit court authorization, the "district court lacks subject matter jurisdiction to decide the merits of" a second or successive § 2255 motion). But when, as here, the amendment related back to the original § 2255 motion, no second or successive issue was implicated.

In sum, we disagree with the district court that Mr. Trent amended his original § 2255 motion to assert an untimely claim based on *Mathis*. If the district court had been correct, we would need to stop here because, as explained above, it would have lacked jurisdiction over an unauthorized second or successive § 2255 motion. Instead, we next address the parties' arguments regarding the law of the case doctrine.

## C. *Law of the Case*

The following discussion presents legal background on the law of the case doctrine and its exceptions. We then consider Mr. Trent's arguments and conclude that *Mathis* was not an "intervening change in the law." As a result, this court's second rationale on Mr. Trent's direct appeal—holding that the Oklahoma conspiracy statute is

15

divisible and that his conviction under that statute was a serious drug offense—stands as law of the case, precluding the § 2255 relief he seeks here.

1. **Law of the Case Generally**

Under the "law of the case" doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *United States v. Monsisvais*, 946 F.2d 114, 115 (10th Cir. 1991) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)); *see also Kennedy v. Lubar*, 273 F.3d 1293, 1298–99 (10th Cir. 2001) ("'Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit' . . . [I]t is not uncommon for [an] 'appellate court . . . [to] adhere [ ] to prior rulings as the law of the case, at times despite substantial reservations as to the correctness of the ruling.'" (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure: Jurisdiction § 4478, at 788 (1981)).[9]

"[U]nder the law-of-the-case doctrine, courts ordinarily would refuse to reconsider arguments presented in a § 2255 motion that were raised and adjudicated on direct appeal." *Abernathy v. Wandes*, 713 F.3d 538, 549 (10th Cir. 2013); *see also id.* (reading *Davis v. United States*, 417 U.S. 333, 342 (1974), as "noting that the law-of-the-case

---

[9] "[T]he 'law of the case' doctrine is not an inexorable command," *White v. Murtha*, 377 F.2d 428, 431 (5th Cir.1967), but "only a rule of practice in the courts and not a limit on their power." *Monsisvais*, 946 F.2d at 116. The doctrine "directs a court's discretion, [but] does not limit the tribunal's power." *Arizona*, 460 U.S. at 618.

doctrine typically precludes consideration of issues in a § 2255 proceeding that were previously decided on direct appeal").[10]

## 2. **Exceptions to Law of the Case**

Courts have recognized exceptions to the law of the case doctrine in "three exceptionally narrow circumstances": "(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice." *United States v. Alvarez*, 142 F.3d 1243, 1247 (10th Cir. 1998) (paragraph breaks omitted). The second exception, also

---

[10] In unpublished § 2255 cases in which the movant sought relief on a claim that was raised and rejected previously on direct appeal, we have explicitly denied the claim as "procedurally barred." *See, e.g., United States v. DeClerck*, 252 F. App'x 220, 222 (10th Cir. 2007); *see also United States v. Temple*, 480 F. App'x 478, 480 (10th Cir. 2012) (holding the district court correctly denied relief based on procedural bar). We have implied the same in published decisions. *See, e.g.*, *United States v. Nolan*, 571 F.2d 528, 530 (10th Cir. 1978) (stating that issues raised in a § 2255 motion that were already decided on direct appeal will generally not be reconsidered); *Baca v. United States*, 383 F.2d 154, 156 (10th Cir. 1967) (same).

It appears that Mr. Trent's claim based on *Mathis* could be resolved on this ground. Indeed, in its response brief opposing § 2255 relief in district court, the Government argued the claim was "procedurally barred." ROA, Vol. 1 at 60, 62. When the district court denied relief, it described this argument as based on "the general rule, sometimes referred to as the 'law of the case' rule." *Trent II*, 2016 WL 7471346 at *2. On appeal, the Government argues the *Mathis* issue in terms of law of the case rather than procedural bar. Aplee. Br. at 10-22. Mr. Trent argues that under *Abernathy*, which applied law of the case in a § 2255 proceeding, his *Mathis* issue should proceed because of an intervening change in law. Aplt. Br. at 22. Given the way the parties have framed the *Mathis* issue on appeal, we follow the approach used in *Abernathy*, and we apply law of the case analysis to Mr. Trent's *Mathis* claim.

We note the Eleventh Circuit has decided that using the procedural bar rule is more appropriate than the law of the case doctrine when a § 2255 motion raises an issue already decided on direct appeal. *See Stoufflet v. United States*, 757 F.3d 1236, 1239-40 (11th Cir. 2014). We see no need to make a choice between the two approaches here.

17

called an "intervening change in controlling law," applies in the § 2255 context. *Davis*, 417 U.S. at 342 (intervening change in law may allow for departure from law of the case in a § 2255 motion); *United States v. Prichard*, 875 F.2d 789, 791 (10th Cir. 1989) (per curiam) ("Absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a collateral attack by a motion pursuant to § 2255.").[11] An intervening change in the law allows reconsideration of a previous decision in the same case only to the extent the change affects the previous decision. *See McKesson Corp. v. Islamic Republic of Iran*, 52 F.3d 346, 350-51 (D.C. Cir. 1995) ("Because this portion of our prior opinion is unaffected by [the intervening change in the law], it remains the law of the case, not subject to reconsideration in this second . . . appeal.").

3. **Analysis: No "Intervening Change" in the Law as to *Trent I*'s Second Rationale**

Mr. Trent relies only on the second exception to the law of the case doctrine—intervening change in the law—and does not argue the other exceptions apply. He contends that *Mathis* changed the law not only with respect to the first rationale in *Trent I*, but also the second because: (a) *Mathis* required courts to be "certain" that a provision in a criminal statute is an element; and (b) *Trent I* did not reach "certainty" in finding that the object of a conspiracy is a traditional element in the Oklahoma general conspiracy statute. *See, e.g.*, Aplt. Br. at 23-24.

---

[11] "[T]he law-of-the-case doctrine and binding circuit precedent function similarly from the perspective of a court addressing an initial § 2255 motion; typically, in both circumstances, the court is bound by a previous court's decision unless there has been an intervening change in the law." *Abernathy*, 713 F.3d at 550 n.11.

18

We affirm because *Mathis* did not create an intervening change in the law with respect to our second rationale in *Trent I*. To do so, it would have needed to announce "a contrary decision of the law applicable" to the relevant issue. *Alvarez*, 142 F.3d at 1247. As we explain further below, (a) *Mathis* did not create a certainty standard that differed from *Taylor* or *Shepard*, and (b) *Trent I* was not "contrary" to, but instead was consistent with, *Mathis* on certainty.

a. *No new certainty standard in* Mathis

*Mathis* did not create a new standard for "certainty." The "certainty" standard to determine whether an offense qualifies for ACCA enhancement derives from *Taylor v. United States*, 495 U.S. 575 (1990), and has been followed in Supreme Court and Tenth Circuit cases for over 25 years. Although *Taylor* did not use the word "certainty," it held that an offense qualifies for the ACCA "if either its statutory definition substantially corresponds to [the] 'generic' [ACCA definition of the crime], or the charging paper and jury instructions *actually* required the jury to find all the elements of [the ACCA definition] in order to convict the defendant." 495 U.S. at 602 (emphasis added). In 2005, the Supreme Court described this holding as "*Taylor*'s demand for certainty when identifying a[n ACCA-eligible] offense." *Shepard v. United States*, 544 U.S. 13, 21 (2005). The Tenth Circuit has followed and applied the *Taylor* certainty standard in ACCA cases. *See e.g. United States v. Huizar*, 688 F.3d 1193, 1195 (10th Cir. 2012) ("And certain we must be: whether we use a categorical or the modified categorical approach, our precedent requires the government to show that Mr. Huizar's conviction 'necessarily' qualifies as 'generic' burglary before . . . the ACCA['s] . . . sentencing

19

enhancement may be triggered." (citing *Taylor*, 495 U.S. at 602; *Shepard*, 544 U.S. at 16, 21, 24)).

*Mathis* comports with the *Taylor* certainty standard. *Mathis* mentions "certainty" only briefly. The Court said, in the context of determining "whether the listed items are elements or means" in "an alternatively phrased statute," that a court can look at state court decisions, the statute on its face, or the record of the prior conviction. 136 S. Ct. at 2256-57. As to the record of the prior conviction, the Court noted: "Of course, such record materials will not in every case speak plainly, and if they do not, a sentencing judge will not be able to satisfy '*Taylor*'s demand for certainty' when determining whether a defendant was convicted of a generic offense." *Id.* at 2257 (quoting *Shepard*, 544 U.S. at 21). The Court then immediately said: "But between those documents and state law, that kind of indeterminacy should prove more the exception than the rule." *Id.* *Mathis* thus referenced an already-established certainty standard and gave additional commentary on the likelihood of reaching certainty when consulting record documents.

b. Trent I *consistent with* Mathis *on certainty*

Nothing in *Trent I*'s second rationale contravenes *Mathis* regarding certainty. *Trent I* did not address certainty directly, but its approach under the second rationale to determine the divisibility of the Oklahoma general conspiracy statute was consistent with *Mathis*. *Trent I* analyzed, under the Oklahoma law, whether the object of a conspiracy is an element in the conspiracy statute. It did not find any case exactly on point but found persuasive evidence in case law and jury instructions. 767 F.3d at 1061-62. *Mathis*

20

included these types of sources in its blueprint to assess a statute's divisibility. *Mathis*, 136 S. Ct. at 2256-57.

Mr. Trent argues that *Trent I* ran afoul of *Taylor* and *Mathis* because its determination of the divisibility question did not have requisite "certainty." *See, e.g.,* Aplt. Br. 23-24. But he fails to explain why *Trent I*'s reading of the Oklahoma cases and jury instructions is incorrect or insufficient. Instead, Mr. Trent argues that *Trent I*'s use of words like "suggestive" and "appears" reflects uncertainty. *Id.* at 24.

In that regard, Mr. Trent misunderstands what is necessary to find divisibility. The divisibility analysis contemplates a collective assessment of case law and other materials. *See United States v. Titties*, 852 F.3d 1257, 1271 (2017) ("On their own, none of these state law sources conclusively resolves the means/elements question, but together they all but establish that [the statute's] purpose alternatives are means."); *id.* at 1272 n.19 ("*Mathis* unambiguously instructs federal courts to settle, if possible, the means/elements issue when applying the ACCA even if there is no on-point state decision."). The *Trent I* court's cautious language does not depart from *Taylor* or *Mathis*. It analyzed *Mathis*-approved materials to arrive at a conclusion.[12]

Even if *Trent I*'s analysis of divisibility fell short of the certainty required under *Taylor* and *Mathis*, it does not follow that *Mathis* created an intervening change in the law. This is so because, as discussed above, *Mathis* did not alter case law precedent

---

[12] Mr. Trent correctly points out that *Trent I*'s discussion of federal continuing-criminal-enterprise case law, 767 F.3d at 1062, falls outside *Mathis*'s listing of state materials to determine the divisibility of a state statute. But it does not follow that the court was uncertain about its divisibility determination based on the state materials. The court noted that that federal statutory analysis was not controlling. *Id.*

established in *Taylor* and its progeny. And even if this panel may have reached a different conclusion on divisibility than the *Trent I* panel, the latter's decision is law of the case that we must accept.

As noted above, Mr. Trent argues only the intervening-change-in-law exception to the law of the case. As Mr. Trent himself asserts, his appeal rises or falls with his intervening-change argument.[13]

### III. CONCLUSION

In *Trent I*, we held the Oklahoma conspiracy statute is divisible, that Mr. Trent's previous conspiracy offense under the modified categorical approach is a serious drug offense, and that he qualified for a sentencing enhancement under the ACCA. This holding is the law of the case unless an exception to that doctrine applies. As we have shown, *Mathis* did not create an intervening change in the law relative to our second rationale in *Trent I*. Because Mr. Trent has not argued for any other exception to law of the case, we affirm the district court's denial of his § 2255 motion.[14]

---

[13] *See, e.g.,* Aplt. Br. at 22 ("[The *Trent I* decision on divisibility], right or wrong, would ordinarily prevent the divisibility conclusion from being revisited in a later action under 28 U.S.C. 2255. But this restriction does not apply when there is an intervening change in the law."); *id.* at 35-36 ("To be sure, before *Mathis* issued, Mr. Trent could not have obtained relief. The district court, and this court too, would have been bound by this court's decision in Mr. Trent's direct appeal. It was only after the intervening decision in *Mathis* that the district court and this court could reach a different conclusion.").

[14] Because we affirm on this ground, we need not address the district court's substantive merits analysis.