**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 2, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

    No. 23-3175

EBUBE OTUONYE,

    Defendant - Appellant.

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. Nos. 6:22-CV-01101-EFM & 6:18-CR-10085-EFM-1)**

_____

Beau B. Brindley, (Blair T. Westover, with him on the briefs), The Law Offices of Beau B. Brindley, Chicago, Illinois, for Defendant-Appellant.

James A. Brown, Assistant United States Attorney (Duston J. Slinkard, Acting United States Attorney, with him on the briefs), Topeka, Kansas, for Plaintiff-Appellee.

_____

Before **HARTZ**, **TYMKOVICH**, and **BACHARACH**, Circuit Judges.

_____

**HARTZ**, Circuit Judge.

_____

Defendant Ebube Otuonye was convicted of improperly filling prescriptions for controlled substances and fraudulently seeking reimbursements from Medicaid and Medicare. He filed a motion to vacate his convictions and sentence under 28 U.S.C. § 2255, arguing that his trial counsel was ineffective by failing to object to an

instruction on the legality of distributing controlled substances prescribed by a physician. The United States District Court for the District of Kansas granted the § 2255 motion on two counts relating to distribution of controlled substances but denied the motion on two counts relating to healthcare fraud. And it denied Defendant's motion to reconsider its partial denial. Exercising jurisdiction under 28 U.S.C. § 2255(d), we affirm.

## I.    BACKGROUND

### A.    Indictment, Trial, and Direct Appeal

Our prior opinion on Defendant's direct appeal sets forth the factual background of this case. *See United States v. Otuonye*, 995 F.3d 1191 (10th Cir. 2021). We repeat only what is necessary to resolve Defendant's § 2255 appeal. As we wrote, "In October 2014, the [federal Drug Enforcement Administration (DEA)] began receiving phone calls from Wichita-area pharmacists raising concerns about the prescribing patterns of Dr. [Steven] Henson." *Id.* at 1196. Investigators determined that an "increasing number of Dr. Henson's patients had prescriptions filled at Neighborhood [Pharmacy]," which "was a retail pharmacy owned and operated by [Defendant], its pharmacist-in-charge." *Id.* at 1197. "Based on the results of the DEA's investigation, [Defendant] was indicted for conspiring to unlawfully distribute controlled substances under 21 U.S.C. § 846 (Count 1); unlawfully distributing controlled substances under 21 U.S.C. § 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2 (Count 2); and Medicare and Medicaid fraud in violation of 18 U.S.C. § 1347 (Counts 3 and 4)." *Id.* at 1196.

2

In Counts One and Two, Defendant's distribution of controlled substances was allegedly accomplished by filling prescriptions. Federal law makes it unlawful "[e]xcept as authorized[,] . . for any person knowingly or intentionally . . . to . . . distribute[] or dispense . . . a controlled substance." 21 U.S.C. § 841(a)(1). Federal regulations authorize the distribution of a controlled substance when a prescription is "issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a).

For those counts the government "presented testimony from multiple pharmacists that the dosages, pill quantities, and dangerous drug combinations that Dr. Henson prescribed should have alerted [Defendant] that the prescriptions did not have a legitimate medical purpose and were prescribed outside the usual course of professional medical practice." *Otuonye*, 995 F.3d at 1212. For example, witnesses testified that Dr. Henson's patients would often have prescriptions for both opioids and benzodiazepines, which are controlled substances that "can have a dangerous additive depressive effect" when taken together. *Id.* at 1200. Other evidence showed patients going to Neighborhood Pharmacy only after other pharmacies rejected their controlled-substance prescriptions.

Counts Three and Four charged healthcare fraud. Federal law makes it unlawful "to defraud any health care benefit program" or "to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit

3

program." 18 U.S.C. § 1347.[1] Medicare and Medicaid are healthcare-benefit programs. *See Otuonye*, 995 F.3d at 1213. The alleged fraud was billing those agencies for filling unnecessary prescriptions.

"At trial, the Government introduced evidence that Neighborhood Pharmacy required customers to fill three prescriptions for non-controlled substances for each controlled substance prescription (the '3:1 Policy')." *Id.* at 1199. Defendant told investigators "that he instituted this policy to balance his inventory so his wholesaler would not limit his supply of controlled substances." *Id.* His wholesaler would flag pharmacies if controlled substances represented more than 20% of purchases.

There was testimony that Defendant "repeatedly called Dr. Henson to ask him to prescribe unnecessary non-narcotic medications to stay under [the 20%] threshold." *Id.* at 1211. A sign at the pharmacy explicitly told its customers that the pharmacy required three noncontrolled prescriptions to fill one controlled prescription. One customer testified that Defendant called Dr. Henson to have him

---

[1] The statute states, in relevant part:

(a) Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice—
    (1) to defraud any health care benefit program; or
    (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,
in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 1347(a).

prescribe three noncontrolled substances when she tried to fill a controlled-substance prescription. And the jury heard a voicemail left by Defendant for Dr. Henson requesting that Dr. Henson write additional noncontrolled prescriptions for a customer.

To further describe and explain the fraudulent scheme, the government relied largely on testimony from Korby Harshaw, Assistant Special Agent in Charge for the Office of Inspector General at the Department of Health & Human Services. Agent Harshaw testified about the reimbursement process for Medicare and Medicaid. He said that Medicare and Medicaid will reimburse "[a]ny prescription for an approved drug that is for a legitimate medical purpose," regardless of whether the prescription was for a controlled or noncontrolled substance. Joint App., Vol. 9 at 1953–54. But they will not reimburse prescriptions that were not medically necessary. A pharmacist submitting a claim for reimbursement certifies that the "claim is for a medically necessary service" that was "actually provided." Joint App., Vol. 9 at 1958.

Based on his review of claims that Defendant's Neighborhood Pharmacy submitted for prescriptions issued to Dr. Henson's patients, Agent Harshaw testified that Medicaid paid $4,927 and Medicare paid $17,024 on those claims. The claims data showed that Neighborhood Pharmacy primarily sought reimbursement for noncontrolled prescriptions. For example, Agent Harshaw said that of the 166 claims that Neighborhood Pharmacy submitted to Medicare for patients of Dr. Henson, it

appeared that only one sought reimbursement for a controlled drug. And that singular submission was by a Neighborhood pharmacist other than Defendant.

Agent Harshaw also testified that the claims data reflected Neighborhood's 3:1 Policy. He gave examples of Defendant's seeking reimbursement from Medicaid for three noncontrolled prescriptions to a patient, despite not seeking reimbursement for a controlled prescription to the patient issued the same day. Agent Harshaw opined that this practice—submitting only noncontrolled prescriptions for reimbursement, even though controlled prescriptions were filled the same day—"indicate[d] that someone was trying to hide the existence of the controlled substance prescription from the government health care programs." Joint App., Vol. 9 at 1965. Supporting this view was the practice of customers paying cash for controlled-substance prescriptions. One customer testified that Defendant falsely told her that insurance would not pay for her controlled substance, so she had to pay out of pocket. Agent Harshaw testified that another red flag indicating that noncontrolled prescriptions were not medically necessary was that "customers and a pharmacist rather than a doctor initiated [those] prescriptions." *Otuonye*, 995 F.3d at 1202–03.

During closing argument the government pointed to this testimony, emphasizing that Counts Three and Four did not "necessarily have to relate to" reimbursements for "controlled" substances but "also include[d]" reimbursements for "the non-controlled[]" substances. Joint App., Vol. 11 at 2472.

After the close of evidence the district court instructed the jury. Instruction 9 provided the elements of Count One, and Instructions 13 and 14 provided the elements of Count Two.

Instruction 16 then explained that 21 U.S.C. § 841 generally makes it unlawful to distribute a controlled substance, but federal regulations provide an exception for practitioners, like pharmacists, to distribute medically necessary prescriptions.[2] It

---

[2] Instruction 16 stated, in part:

Under 21 U.S.C. § 841(a)(1), federal law provides that "it shall be unlawful for any person knowingly or intentionally . . . to . . . distribute, or dispense . . . a controlled substance." However, federal regulations provide an exception for Controlled Substance prescriptions that are issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. To be lawful and effective, a prescription must meet the requirements of Section 1306.04 of Title 21 of the Code of Federal Regulations. That section states, in pertinent part:

A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rest with the pharmacist who fills the prescription. An order purporting to be a prescription issued not in the usual course of professional treatment . . . is not a prescription within the meaning and intent of . . . the Act . . . and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.

Under this regulation, a registered practitioner may prescribe, dispense or distribute a controlled substance if he acts both for a legitimate medical purpose and while acting in the usual course of his profession. Without both, a practitioner is subject to prosecution. In other words, *if the*

told the jury, however, that the exception did not apply "if the Government proves beyond a reasonable doubt that a prescription was knowingly dispensed or distributed (1) not for a legitimate medical purpose, or (2) outside the usual course of professional practice." Aplt. App., Vol. 1 at 86. It explained that the exception was "relevant" because Counts One and Two related to charges under § 841. *Id.* at 87. Instruction 16 was given without any substantive objection by Defendant's trial counsel.[3]

Instruction 18 set forth the elements of Counts Three and Four. It stated:

To find the defendant guilty of health care fraud [the jury] must be convinced that the government has proved each of the following elements beyond a reasonable doubt:

**First**: on or about the dates alleged in Counts 3 and 4, the defendant knowingly and willfully executed or attempted to execute a scheme or artifice to defraud a health care benefit program in connection with the delivery or payment of benefits under the health care benefit program;

---

*Government proves beyond a reasonable doubt that a prescription was knowingly dispensed or distributed (1) not for a legitimate medical purpose, or (2) outside the usual course of professional practice, then the exception to the Controlled Substances Act does not apply.*

This provision is relevant here in two ways. First, Count 1 of the indictment charges that the defendant conspired with other persons under § 846 to violate § 841(a)(1). Second, Count 2 alleges that the defendant directly violated § 841(a)(1), or that he aided and abetted in violating § 841(a)(1). The defendant is charged in Count 2 with the Distribution and Dispensing of controlled substances, in violation of 21 U.S.C. § 841(a)(1) and Title 18, U.S.C[.] § 2, Aiding and Abetting.

Aplt. App., Vol. 1 at 86 (ellipses in original) (emphasis added).

[3] Defense counsel asked only that a "stray" word be struck from the instruction. Joint App., Vol. 10 at 2359.

**Second**: the defendant made statements or representations, or omitted facts, which were material, as part of the scheme;

**Third**: the statements or representations were false;

**Fourth**: the defendants acted with the specific intent to defraud; and

**Fifth**: the scheme or artifice to defraud affected interstate commerce.

*Id.* at 90. Instruction 19 defined certain terms. As relevant here, it provided:

A "scheme to defraud" is conduct intended to or reasonably calculated to deceive persons of ordinary prudence or comprehension. A "scheme to defraud" includes a scheme intended to deprive a health care benefit program of money or funds.

A "specific intent to defraud" means an intent to deceive or cheat someone or some entity.

The words "scheme to defraud" and "artifice to defraud," used in 18 U.S.C. § 1347 include any plan, pattern or course of action intended to deceive others in order to obtain something of value, such as money, from the program to be deceived.

. . .

The term "false or fraudulent pretenses, representations or promises," means a statement, an assertion, or representation which was untrue when made and was either known by a defendant to be untrue at the time it was made or used, or was made or used with reckless indifference as to whether it was, in fact, true or false.

*Id.* at 91.

Defendant was convicted on all four counts. *See Otuonye*, 995 F.3d at 1203. He appealed, raising challenges to the admission of evidence, the sufficiency of evidence on each count, and his sentence. *See id.* We affirmed on each issue. *See id.*

Dr. Henson was tried and convicted in a separate proceeding. We also affirmed his convictions on direct appeal. *See United States v. Henson* (*Henson I*), 9 F.4th 1258, 1263 (10th Cir. 2021).

9

### B.    Intervening Legal Developments

After Defendant was convicted the Supreme Court decided *Ruan v. United States*, which held that a conviction under § 841 requires that "the Government . . . prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner." 597 U.S. 450, 457 (2022). It explained that the government might rely on the objective unreasonableness of a prescription as "circumstantial evidence . . . that a defendant knew or intended that his or her conduct was unauthorized," but it "must still carry [its] burden" of proving scienter. *Id.* at 467.

In light of *Ruan*, the Court vacated and remanded our decision in *Henson I*. *See Henson v. United States*, 142 S. Ct. 2902 (2022) (mem.). On remand we vacated Dr. Henson's distribution convictions. *See United States v. Henson* (*Henson II*), No. 19-3062, 2023 WL 2319289, at *2 (10th Cir. Mar. 2, 2023) (unpublished).

### C.    Postconviction Proceedings

In April 2022 Defendant filed a pro se motion to vacate his conviction under 28 U.S.C. § 2255.[4] After *Ruan*, Defendant's counsel filed a supplemental motion to raise an additional claim of ineffective assistance of counsel based on trial counsel's failure to object to Jury Instruction 16.[5] The motion did not suggest that the

---

[4] The pro se motion asserted ineffective assistance of counsel from trial counsel's failure to hire certain experts; investigate, cross-examine, and call certain witnesses; and respond to and advance certain arguments and evidence. These issues are not raised on appeal.

[5] The supplemental motion also argued that trial counsel was constitutionally ineffective by failing to interview government witnesses before trial, failing to

instruction was inaccurate in describing the requirements for issuing (or filling) a prescription for a controlled substance, but it argued that it misstated the intent required for criminal prosecution. It said that Instruction 16 attached the requisite intent requirement "only to the legitimate medical purpose prong" and permitted "conviction if the dispensation was outside the course of professional practice," Supp. Aplee. App., Vol. 1 at 50, even without the requisite proof that "the defendant knowingly or intentionally acted in an unauthorized manner," *Ruan*, 597 U.S. at 457.

Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a defendant seeking relief for ineffective assistance of counsel must show both that his "counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." Ruling that both requirements had been satisfied, the district court vacated Defendant's convictions on Counts One and Two. *See United States v. Otuonye*, No. 6:18-CR-10085-EFM, 2023 WL 4457003, at *5–8 (D. Kan. July 11, 2023) (unpublished). But it held that Defendant did not show prejudice as to Counts Three and Four, so it denied relief on those counts. *See id.* at *9.

Defendant moved, pro se, for reconsideration, arguing that "Counts One and Two [we]re directly linked to Counts Three and Four." Supp. Aplee. App., Vol. 1 at 275. His counsel filed a supplemental motion, which similarly argued that "Counts 3 and 4 are entirely parasitic on Counts 1 and 2." *Id.* at 283. The district court denied

---

consult experts, and failing to preserve an objection to a guideline calculation. These issues are also not raised on appeal.

the motion to reconsider. *See United States v. Otuonye*, No. 6:18-CR-10085-EFM, 2023 WL 5952174, at *1 (D. Kan. Sept. 13, 2023) (unpublished).[6]

Defendant sought a certificate of appealability, *see* 28 U.S.C. § 2253(c)(1)(B) (requiring certificate of appealability to appeal denial of relief under § 2255), which we granted on "[w]hether the district court erred in denying [Defendant]'s 28 U.S.C. § 2255 petition as to Count 3 and Count 4 of the indictment charging violations of 18 U.S.C. § 1347." Order Granting Certificate of Appealability, Dkt. No. 75.

## II.     ANALYSIS

The central issue on appeal is whether the error in Instruction 16 prejudiced Defendant with respect to Counts Three and Four. *See Strickland*, 466 U.S. at 687.[7] A

---

[6] The government also moved for reconsideration, asking the district court to reverse its decision vacating Counts One and Two, which the district court also denied. Because the government did not cross-appeal the district court's decisions, we do not consider whether the district court was correct in vacating those counts. *See Nielson v. Ketchum*, 640 F.3d 1117, 1121 n.4 (10th Cir. 2011).

[7] The government contends that we lack jurisdiction to consider this claim because Defendant did not raise his argument with respect to Counts Three and Four until his reply brief in support of his § 2255 motion, which it believes was untimely. We need not decide whether the government is correct in saying that the issue was not raised before his reply brief, because (1) the government concedes that his attorney's supplemental § 2255 motion was timely, (2) the supplemental motion raised his arguments with respect to Counts One and Two, and (3) a new claim raised after the expiration of the one-year limitations period is not untimely if it relates back to a timely claim. *See United States v. Trent*, 884 F.3d 985, 993 (10th Cir. 2018); *see also* 28 U.S.C. § 2255(f). A new claim relates back to an existing claim if both claims are "tied to a common core of operative facts." *Trent*, 884 F.3d at 993 (internal quotation marks omitted). And even if a new claim "provided additional analysis" or citations, it can relate back to a prior claim unless the new claim is "totally separate and distinct, in both time and type from the claims raised in the original motion." *Id.* (brackets and internal quotation marks omitted).

Here, the claim in Defendant's district-court reply brief that the error in Instruction 16 requires dismissal of his convictions on Counts Three and Four is

defendant has been prejudiced in the ineffective-assistance context if "there is a reasonable probability that but for counsel's failure to object, the result of the proceeding would have been different." *Yarrington v. Davies*, 992 F.2d 1077, 1080 (10th Cir. 1993). "[W]e review the district court's legal conclusions regarding ineffective assistance of counsel claims de novo." *United States v. Cook*, 49 F.3d 663, 665 (10th Cir. 1995). Because we hold that Defendant failed to demonstrate prejudice, we need not consider whether the performance of Defendant's counsel was deficient with respect to Counts Three and Four. *See Yarrington*, 992 F.2d at 1080.

To begin with, Instruction 16 does not purport to be relevant to the healthcare-fraud charges in Counts Three and Four. It begins by quoting 21 U.S.C. § 841(a)(1), the crime charged in Counts One and Two, which prohibits distribution of a controlled substance. It then states that there is an exception to that prohibition for legitimate prescriptions and quotes the federal regulation providing the exception. The next paragraph of the instruction states what the government must prove to establish that the distribution of prescriptions is illegitimate and, in language that we have rejected under *Ruan*, the intent required for a criminal violation. But in a paragraph that clearly limits the applicability of Instruction 16, the instruction states:

---

based on the same operative fact (trial counsel's failure to object to the error in Instruction 16) as his previous argument for dismissal of Counts One and Two. Reviewing the legal impact of that failure on Counts Three and Four does not require us to consider theories "totally separate and distinct, in both time and type" from the grounds for dismissal of Counts One and Two. *Id.* (internal quotation marks omitted).

The government raises other preservation arguments, but none goes to our jurisdiction and, in light of our resolution of the merits, we need not consider those arguments.

13

> This provision [of the regulation] is relevant here in two ways. First, Count 1 of the indictment charges that the defendant conspired with other persons under § 846 to violate § 841(a)(1). Second, Count 2 alleges that the defendant directly violated § 841(a)(1), or that he aided and abetted in violating § 841(a)(1).

Aplt. App., Vol. 1 at 87. Thus, Instruction 16 itself implied that it was not relevant to the jury's consideration of Counts Three or Four.

In addition, Counts Three and Four are not related, legally or factually, to Counts One and Two. Counts Three and Four charged healthcare fraud under 18 U.S.C. § 1347(a). As set forth in Instruction 18, the government needed to prove five elements to establish guilt of the offense: (1) "the defendant knowingly and willfully executed or attempted to execute a scheme or artifice to defraud a health care benefit program in connection with the delivery or payment of benefits under the health care benefit program"; (2) "the defendant made statements or representations, or omitted facts, which were material, as part of the scheme"; (3) "the statements or representations were false"; (4) "the defendant[] acted with the specific intent to defraud"; and (5) "the scheme or artifice to defraud affected interstate commerce." *Id.* at 90. Notice that absent from these elements is any requirement that Defendant unlawfully distributed a controlled substance.

Nor did the government in fact need to prove unlawful distribution of controlled substances to prove the fraud counts. The counts charged Defendant with fraudulently billing Medicare and Medicaid for filling prescriptions that were not for a legitimate medical purpose. The instructions told the jury that a "'scheme to defraud' includes a scheme intended to deprive a health care benefit program of

money or funds." *Id.* at 91. There was no question that Medicare and Medicaid are healthcare-benefit programs. *See Otuonye*, 995 F.3d at 1213. And there was uncontested testimony that a claim is a material step in receiving funds from the programs. As Agent Harshaw testified, Medicare and Medicaid would reimburse for prescriptions issued for an approved drug for a legitimate medical purpose. And to seek reimbursement, a pharmacist just needed to submit a claim certifying that the claim was for a medically necessary service (here, filling a prescription) that was provided.

The factual question for the jury, therefore, was whether Defendant fraudulently certified that prescriptions were for legitimate medical purposes, regardless of whether they were for controlled substances. And the prosecution answered that question not by reference to prescriptions for controlled substances but by pointing to prescriptions for noncontrolled medications. What Defendant fraudulently sought from Medicare and Medicaid was reimbursement for prescriptions issued under the 3:1 Policy. Recall that the wholesale supplier for Defendant's Neighborhood Pharmacy would not sell to the pharmacy if more than 20% of its sales were for controlled substances, so Defendant needed to offset his sales of controlled substance with many more sales of noncontrolled medications. Defendant would call Dr. Henson to get three noncontrolled prescriptions when a customer would try to fill one controlled prescription, which indicated to Agent Harshaw that the noncontrolled prescriptions were not medically necessary.

The fraud counts were not focused on Defendant's dispensing controlled substances. In fact, the evidence indicated that Defendant rarely, if ever, sought reimbursement from Medicare or Medicaid for filling prescriptions for such drugs. Only one of the underlying Medicare claims was for a controlled-substance prescription, and Defendant was not the one who filled that prescription. (Agent Harshaw suggested that the likely reason why Defendant did not seek reimbursement from Medicare or Medicaid—and insisted on out-of-pocket payment by recipients—for controlled substances was to "hide the existence of . . . controlled substance prescription[s] from the government health care programs." Joint App., Vol. 9 at 1965.) As defense counsel acknowledged to the court during a conference on a question from the jury during its deliberations, "[I]t was basically the non-controlled substances that created the health care fraud." Joint App., Vol. 11 at 2509.[8]

Further, any error in Instruction 16 regarding the scienter required to prove a criminal distribution of narcotics would not affect the verdict on Counts Three and Four. Defendant argues that Instruction 16 allowed a conviction without a showing of

---

[8] Defendant's Reply Brief challenges, for the first time, the proposition that "the Medicare and Medicaid fraud counts turned, not on the controlled substances, but on the noncontrolled substance prescriptions Dr. Henson issued to fulfill Neighborhood Pharmacy's 3:1 policy." Reply Br. at 21. He contends that this "argument would seem to allow a conviction based on a theory that was not articulated in the indictment." *Id.* This argument, however, ignores the record. Not only does the indictment refer to the 3:1 Policy; but the prosecutor in closing argument pointed to the noncontrolled prescriptions to support the fraud charge. Indeed, as noted above, in a conference with the court while the jury was deliberating, Defendant's trial counsel acknowledged that "it was basically the non-controlled substances that created the health care fraud." Joint. App., Vol. 11 at 2509.

16

his subjective intent. But the healthcare-fraud counts have their own scienter requirement. They required a false statement that "was either known by a defendant to be untrue at the time it was made or used, or was made or used with reckless indifference as to whether it was, in fact, true or false." Aplt. App., Vol. 1 at 91. And the jury was required to find that Defendant "knowingly and willfully executed or attempted to execute" the scheme. *Id.* at 90. All that was required was that Defendant knew that the prescriptions submitted for reimbursement by Medicare or Medicaid were not medically necessary. Thus, a finding of guilt on those counts did not require the jury to find that Defendant filled the controlled-substance prescriptions with the requisite criminal intent. The jury could convict Defendant on the counts of fraud regardless of whether he had the scienter necessary to convict him for distributing controlled substances; for example, he could be convicted of fraud even if the jury found that he was merely trying to avoid problems with his wholesaler by filling improper prescriptions for noncontrolled substances.

We need not put too fine a point on the matter. In light of the evidence at trial, the prosecution's theory of the case, and the proper instructions on the fraud counts, we hold that Defendant has not shown the requisite prejudice to overturn the convictions on Counts Three and Four because of any error regarding scienter in Instruction 16. We do not see a "reasonable probability," *Yarrington*, 992 F.2d at 1080, that the jury would have failed to convict him on the fraud charges if Instruction 16 had been correct.

The authorities relied on by Defendant do not contradict our analysis. Our decision in *United States v. Kahn* (*Kahn II*), 58 F.4th 1308 (10th Cir. 2023) is fully consistent with what we are doing here. After *Ruan* required us to reverse the doctor's distribution conviction under § 841 because the instructions failed to state the proper mens rea, *see id.* at 1360–21, we proceeded to also set aside his conviction for money laundering. But that was because, unlike the fraud charges in the present case, the money-laundering charge "predicate[d] conviction on the jury's finding of guilt" of the distribution charges. 58 F.4th at 1321. The money-laundering statute, 18 U.S.C. § 1957(a), requires that the money being laundered be "derived from specified unlawful activity," and (since one such specified activity is the "distribution of a controlled substance," 18 U.S.C. § 1956(c)(7)(B)(i); *see* 18 U.S.C. § 1957(f)(3) (adopting the meaning of *specified unlawful activity* in § 1956)) the jury could have convicted on the basis of defendant's distribution conviction. *See, e.g.*, *United States v. Weidner*, 437 F.3d 1023, 1040–41 (10th Cir. 2006) (money-laundering conviction predicated on wire fraud). Thus, "the 'unlawful activity' at issue [was] . . . tied back to the conduct charged in" the § 841 counts, and the money-laundering charge was "predicated, at least in part, on one or more of the erroneous § 841(a)(1) instructions." *Kahn II*, 58 F.4th at 1322. Here, however, the fraud statute does not require that the defendant violated any other statute, much less distribution of a controlled substance under § 841. Defendant's reliance on *Henson II*, 2023 WL 2319289, at *2 (a nonprecedential opinion where there was no dispute about the

18

propriety of the dismissal of charges for money laundering and possession of a firearm in furtherance of a drug-trafficking crime) is misplaced for the same reason.

Defendant's out-of-circuit caselaw fares no better. In *United States v. Smithers*, 92 F.4th 237, 250–52 (4th Cir. 2024), after reversing convictions on 859 counts under § 841 under *Ruan*, the Fourth Circuit reversed a conviction on one count of "knowingly and intentionally maintaining a place for the purpose of unlawfully distributing controlled substances." Of course, the single maintenance count was obviously based on the hundreds of distribution counts, and the court reasoned "that once the jury convicted [the defendant] on the unlawful-distribution counts, a conviction on the maintaining-a-place count was inevitable." *Id.* at 251. In contrast, the fraud counts in this prosecution were not based on the distribution charges; on the contrary, they focused on prescriptions for noncontrolled drugs.

Finally, Defendant relies on some language of the Eleventh Circuit in *United States v. Ignasiak*, 667 F.3d 1217 (11th Cir. 2012), which reversed convictions for healthcare fraud and illegal distribution because the admission of autopsy reports violated the Confrontation Clause. *See id.* at 1219, 1236–37, 1239. There was no *Ruan* issue in the case; Defendant hangs his hat on the court's comment in its discussion of harmless error that the convictions were "inextricably intertwined." *Id.* at 1227. But whatever point the court was making, we know that it was not relevant to the circumstance before us. The Eleventh Circuit, on remand after *Ruan*, overturned the convictions under § 841 but upheld the defendant's healthcare-fraud convictions. *See United States v. Ruan*, 56 F.4th 1291, 1298–300 (11th Cir. 2023).

19

The court explained that *Ignasiak* was limited to prosecutions in which the healthcare-fraud charges were based on submissions to healthcare-benefit programs of illegitimate prescriptions that violated § 841. *See id.* Moreover, *Ignasiak* was concerned only with an evidentiary issue; "it was not announcing any broader principle about how the two types of charges relate to one another." *Id.* at 1300.

Instruction 16 did not taint the verdicts on Counts Three or Four. Therefore, trial counsel's failure to object to the instruction did not prejudice Defendant with respect to those counts, and the district court did not err in denying the requested relief.

## III.    CONCLUSION

We **AFFIRM** the district court's denial of Defendant's § 2255 motion as to Counts Three and Four and its order denying reconsideration. We **GRANT** Defendant's motion for leave to file his Reply Brief out of time.