MURPHY, Circuit Judge.
I. INTRODUCTION
Richard Roe pleaded guilty to conspiring to possess with intent to distribute 280 grams or more of cocaine base ("crack") and five kilograms or more of cocaine. See 21 U.S.C. §§ 841(a)(1), 846. Based in part on the drug quantities involved, Roe was subject to a twenty-year mandatory minimum sentence. See id="p1287" href="#p1287" data-label="1287" data-citation-index="1" class="page-label">*1287id. § 841(b)(1)(A)(ii)-(iii). Pursuant to the terms of Roe's plea agreement, the government requested a sentence below the mandatory minimum. See 18 U.S.C. § 3553(e). The district court imposed a fifteen-year sentence.
Roe did not file a direct appeal; instead, he filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence. He asserted trial counsel was ineffective in failing to: (1) challenge the drug quantity at the sentencing hearing ("drug-quantity claim") and (2) file a notice of appeal as requested ("failure-to-file claim"). The district court summarily denied the drug-quantity claim, concluding Roe's guilty plea established the relevant quantity. It held an evidentiary hearing on the failure-to-file claim. Trial counsel testified Roe never told him to file an appeal because they never discussed the issue. In a post-hearing motion, Roe sought to amend his failure-to-file claim so it focused on trial counsel's failure to consult with him as to whether an appeal should be filed (the "failure-to-consult claim"). The district court rejected, on two separate grounds, Roe's failure-to-consult claim. It concluded the failure-to-consult claim was an untimely new claim that did not relate back to the failure-to-file claim set out in Roe's original § 2255 motion. In the alternative, the district court concluded the failure-to-consult claim failed on the merits.
Roe filed a notice of appeal and this court granted him a certificate of appealability to raise both the drug-quantity and failure-to-consult claims. As to the failure-to-consult claim, however, we specifically directed the parties to address whether the claim was timely (i.e., whether the claim relates back to Roe's original § 2255 motion).
Exercising jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(c)(1)(B), this court affirms the order of the district court denying Roe's § 2255 motion. In so doing, we hold as follows: (1) when a criminal defendant enters a knowing and voluntary guilty plea to an indictment charging a drug conspiracy with an attendant quantity element, the defendant is subject to the enhanced penalties associated with that quantity; and (2) Roe's failure-to-consult claim does not relate back to his failure-to-file claim and is, therefore, untimely.
II. BACKGROUND
A. Underlying Criminal Proceedings
In a multi-defendant, multi-count indictment, a federal grand jury charged Roe with, inter alia, one count of conspiracy to commit the following criminal offenses: (1) "to manufacture, to possess with intent to distribute and to distribute 280 grams or more" of crack; and (2) "to possess with intent to distribute and to distribute five kilograms or more" of cocaine. See 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii)-(iii), 846. This charge is hereinafter referred to as the "Conspiracy Count." The minimum sentence applicable to the Conspiracy Count, based exclusively on the quantity of drugs set out in the indictment, is a term of imprisonment of no less than ten years. Id. § 841(b)(1)(A)(ii)-(iii). The United States, however, filed an information under 21 U.S.C. § 851, providing notice that Roe had a prior Kansas state felony conviction for possession of cocaine. The existence of this prior felony drug conviction increased the relevant statutory mandatory minimum to twenty years' imprisonment. Id. § 841(b)(1)(A)(ii)-(iii).
Roe pleaded guilty to the Conspiracy Count pursuant to a written plea agreement. In exchange for Roe's guilty plea, the government promised, inter alia, to dismiss the remaining counts in the indictment; to not file a second information under § 851, thereby eliminating the possibility Roe would be subject to a statutory mandatory life sentence, see ibr.US_Case_Law.Schema.Case_Body:v1" id="p1288" href="#p1288" data-label="1288" data-citation-index="1" class="page-label">*1288id. § 841(b)(1)(A)(ii)-(iii) ; and to file a motion for relief from the twenty-year mandatory minimum, see 18 U.S.C. § 3553(e), should Roe provide substantial assistance in the investigation or prosecution of another individual. In exchange for these promises, Roe not only agreed to plead guilty, he also agreed to waive "any right to challenge a sentence imposed which is within the [G]uideline range determined appropriate by the court." Following a hearing, the district court concluded Roe's guilty plea was knowing and voluntary, was based only on the promises set out in the plea agreement, and was supported by a factual basis as to every element of the charged offense.[1]
In advance of the sentencing hearing, the Office of Probation and Pretrial Services prepared a Presentence Investigation Report ("PSR"). Based on interviews with Roe's co-conspirators, as well as the testimony of those individuals during related proceedings, the PSR concluded Roe purchased and distributed more than ten kilograms of cocaine during the course of the conspiracy.[2] This quantity of cocaine resulted in a base offense level of thirty-two. U.S.S.G. § 2D1.1(c)(4). The PSR increased Roe's offense level by two because he possessed a firearm during the course of the conspiracy, see id. § 2D1.1(b)(1), but decreased his offense level by three based on his acceptance of responsibility, see id. § 3E1.1(a), (b). Roe's total offense level of thirty-one, when combined with a criminal history category of V, resulted in an advisory Guidelines range of 168 to 210 months' imprisonment.[3] See U.S.S.G. Sentencing Table. Pursuant to the provisions of U.S.S.G. § 5G1.1(b), however, Roe's Guidelines range was set at 240 months' imprisonment because the statutory mandatory minimum was greater than the high end of the advisory Guidelines range. In advance of the sentencing hearing, Roe's trial counsel did not object to the drug-quantity calculations set out in the PSR. Consistent with the terms of the plea agreement, the government filed a pre-sentencing motion indicating Roe had provided the prosecution with substantial assistance. See 18 U.S.C. § 3553(e), U.S.S.G. § 5K1.1. That motion asked the district *1289 court to reduce Roe's otherwise applicable statutory minimum twenty-year sentence by twenty-five percent and, accordingly, impose a sentence of 180 months' imprisonment.
At the sentencing hearing, trial counsel reiterated that he had no objections to the PSR. Roe emphasizes that his trial counsel did not request a sentence lower than the 180-month sentence requested by the government.[4] During his allocution, Roe asserted he had "never seen the amount of drugs that I'm charged with in this case ... but now I understand how a conspiracy works." He elaborated on this understanding: "I was involved no matter how big or small the role I played." Roe told the court that, while he meant no "disrespect," he bought the cocaine recited in the PSR (which specifically recognized Roe purchased multi-ounce quantities of cocaine at least twice a week) as part of his "drug addiction." The district court concluded the 180-month sentence recommended by the government was an appropriate one, "given the amount of drugs" Roe was "involved in distributing." The district court incorporated the PSR's findings into its sentence and sentenced Roe to 180 months' imprisonment on the Conspiracy Count. The district court then addressed Roe's appellate rights, stating as follows: "I know there was a waiver of appeal rights in the Plea Agreement. Are there any rights which would survive this particular sentence?" Trial counsel answered the district court's inquiry in the negative. Roe did not file a direct appeal.
B. Roe's § 2255 Motion
On February 23, 2015, Roe filed a timely, pro se § 2255 motion to vacate, set aside, or correct his sentence. He argued, inter alia, that trial counsel was ineffective for failing "to legally object to the length of the sentence during the sentencing hearing." This prejudiced him, Roe asserted, because the "court cannot permit a defendant to be sentence[d] on charges that were not made and/or proven to be true in the criminal indictment against him." Roe specifically challenged trial counsel's failure to object to "the alleged weight of the drugs," claiming he was "negligently charged ten kilograms" even though he "only had one gram of cocaine" during his arrest. Any drug quantity that increased the statutory penalty for an offense must be proved, Roe argued. According to Roe, however, he never "legally *1290 admitted" any quantity except for "one gram of cocaine."[5] As a remedy, Roe asked to be resentenced without regard to the minimum mandatory. As an alternate ground for obtaining § 2255 relief, Roe asserted trial counsel was ineffective for failing to file a notice of appeal. In support of this ground for relief, Roe specifically averred he had requested that trial counsel file a notice of appeal on the day he was sentenced.[6]
In its response to Roe's § 2255 motion, the government argued Roe never asked trial counsel to file a notice of appeal "at the time of or near the time of his sentencing." The government relied on an affidavit provided by Roe's trial counsel. According to trial counsel, while either Roe or a member of Roe's family had asked about filing a notice of appeal, the inquiry came several months after sentencing, well after the time to appeal had expired. As to Roe's drug-quantity claim, the government argued the PSR correctly relied on sworn trial testimony to determine Roe's applicable drug quantity.
In a preliminary order denying in part Roe's § 2255 motion, the district court identified, inter alia, two claims of ineffective assistance of counsel that are relevant to the issues on appeal: the drug-quantity claim and the failure-to-file claim. As to the drug-quantity claim, the district court concluded "the precise amount of drugs" calculated in the PSR "was immaterial because the statutory minimum ... (based on [Roe's] plea to a conspiracy involving five kilograms or more of cocaine)" established his sentence. The district court then turned to the plea agreement and plea colloquy and, citing the factual basis, concluded Roe admitted to conspiring to distribute and possess with intent to distribute more than five kilograms of cocaine. Because Roe entered this guilty plea, the court ruled that trial counsel's failure to object to the sentence was neither deficient nor prejudicial.[7] In contrast to its *1291 summary disposition of Roe's drug-quantity claim, the district court did not deny the failure-to-file claim outright. Instead, it ordered an evidentiary hearing, limited to whether Roe had instructed trial counsel to file an appeal. It also appointed counsel to represent Roe at the evidentiary hearing.
At the evidentiary hearing on Roe's failure-to-file claim, Roe's appointed counsel delved into matters well beyond the question whether Roe requested that trial counsel file a notice of appeal. On examination by Roe's appointed counsel, trial counsel testified the drug-quantity evidence against Roe came from a statement a co-defendant gave to the prosecution. According to trial counsel, Roe "didn't agree with" those quantities. Trial counsel elaborated that the single co-conspirator's proffer[8] as to the quantities Roe handled "seemed to be way more involvement than ... [Roe] had ever talked to me about or that I could find independently." According to trial counsel, at the time of the plea, Roe was concerned about the question of drug quantity as there was only "one very small drug deal that he was part of."[9] Trial counsel further testified about the prior conviction used to establish one aspect of Roe's mandatory minimum. In particular, he admitted he had not researched whether that conviction would qualify as a federal felony sufficient to enhance Roe's sentence. Nor did he research whether any *1292 of Roe's other convictions would support an enhanced sentence.[10] As to the matter that led to the evidentiary hearing, trial counsel testified Roe never told him to file a notice of appeal. Trial counsel conceded he never spoke to Roe about an appeal centering on the issue of drug-quantity. In fact, trial counsel never discussed with Roe "appealing at all."
Almost two years after filing his § 2255 motion, Roe filed a supplemental brief. In that supplemental brief, he argued for the first time that trial counsel was ineffective for failing to consult with him about an appeal because he demonstrated an interest in appealing and had non-frivolous appellate issues. Specifically, those asserted non-frivolous issues related to the validity of Roe's predicate conviction, the sufficiency of the plea's factual basis, the propriety of the drug-quantity calculations, and the applicability of the twenty-year mandatory minimum sentence. The supplemental brief asserted Roe suffered prejudice from trial counsel's alleged deficient performance because, with the benefit of a proper consultation about the matter, he would have filed an appeal.
In response, the government claimed Roe's supplemental brief raised new issues as to the validity of Roe's predicate conviction, the sufficiency of the factual basis, the correctness of the drug-quantity calculations, and the applicability of the twenty-year mandatory minimum sentence. The response further asserted Roe failed to seek leave to amend his original motion. As to the failure-to-file claim, the government noted trial counsel testified Roe did not ask him to file a notice of appeal.
The district court denied Roe's § 2255 motion. It found that, since Roe did not testify at the hearing but trial counsel did, the "undisputed evidence" supported the conclusion Roe "never asked counsel to file an appeal." The district court determined Roe's argument that trial counsel failed to consult with him about an appeal was a "proposed amended claim" and, therefore, Roe's supplemental brief must be treated as a motion to amend. Finally, it concluded the failure-to-consult claim was a time-barred *1293 new theory. In the alternative, the district court further rejected the failure-to-consult claim on the merits.
III. ANALYSIS
A. Drug-Quantity Claim
In his § 2255 motion, Roe asserted trial counsel should have objected at sentencing to the applicability of the quantity-based, statutory mandatory minimum sentence. The district court rejected this argument on the basis, inter alia, that Roe knowingly and voluntarily admitted, in the plea agreement and at the plea colloquy, that he conspired to distribute and to possess with intent to distribute five kilograms or more of cocaine. Thus, according to the district court, trial counsel's failure to object did not amount to deficient performance.[11] Roe appeals, arguing the district court erred in determining the admission in his guilty plea, standing alone, made him liable at sentencing for the quantity of cocaine set out in the indictment.
1. Jurisdiction
The government asserts this court lacks jurisdiction to review the merits of the drug-quantity claim because Roe's notice of appeal did not reference the May 23, 2016 order of the district court that resolved this claim. See Fed. R. App. P. 3(c)(1)(B) (providing that a notice of appeal shall "designate the judgment, order, or part thereof being appealed"). The government's arguments in this regard are not well-taken. As the government recognizes, Roe's notice of appeal did designate the district court's order of March 24, 2017, the order resolving the last of Roe's claims for post-conviction relief. This court has consistently held that a "notice of appeal that names the final judgment is sufficient to support review of all earlier orders that merge in the final judgment under the general rule that appeal from a final judgment supports review of all earlier interlocutory orders." Siloam Springs Hotel, LLC v. Century Surety Co. , 906 F.3d 926, 931 (10th Cir. 2018) (quotation omitted). There is simply no doubt the district court's interlocutory order of May 23, 2016, which disposed of only a portion of the claims set out in Roe's § 2255 motion, merged into the district court's final order of March 24, 2017. Thus, Roe's notice of appeal, which identified the March 24, 2017 order, vested this court with appellate jurisdiction to review the district court's ruling on Roe's drug-quantity claim.
2. Standard of Review
This court "review[s] the district court's legal rulings on a § 2255 motion de novo and its findings of fact for clear error." United States v. Orange , 447 F.3d 792, 796 (10th Cir. 2006). The district court's conclusion that trial counsel did not perform deficiently in failing to object at sentencing to the applicability of the statutory mandatory minimum rests entirely on a legal conclusion (i.e., Roe's plea of guilty to the Conspiracy Count established the applicability of the mandatory minimum). Accordingly, this court's review is de novo.
3. Analysis
Roe's drug-quantity claim can be resolved in a straightforward and limited fashion by resolving the following narrow question: Does a knowing and voluntary guilty plea to an indictment charging a *1294 drug conspiracy with an attendant quantity element subject the defendant, without more, to any enhanced penalties associated with that quantity?[12] Because a knowing and voluntary "guilty plea is an admission of all the elements of a formal criminal charge," McCarthy v. United States , 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), and because a charged drug quantity that triggers the application of a mandatory minimum sentence is an element of the charged drug crime, Alleyne v. United States , 570 U.S. 99, 103, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), the answer to this question is an unequivocal "yes."
As far as this court can tell, and Roe has not cited any precedent to the contrary, every court that has confronted the issue has stated that a knowing and voluntary guilty plea to an indictment which includes a mandatory-minimum-inducing drug-quantity element subjects a defendant to that mandatory minimum sentence. See, e.g., Davis v. United States , 817 F.3d 319, 326 (7th Cir. 2016) ; United States v. Caballero , 672 F. App'x 72, 75 (2d Cir. 2016) ; United States v. Jefferson , 791 F.3d 1013, 1016 (9th Cir. 2015) ; United States v. Etienne , 772 F.3d 907, 923 (1st Cir. 2014) ; United States v. Hinojosa , 749 F.3d 407, 412 (5th Cir. 2014) ; United States v. Bradley , 581 F. App'x 249, 253 (4th Cir. 2014) ; United States v. Heard , 561 F. App'x 873, 877 (11th Cir. 2014) ; United States v. Johnson , 732 F.3d 577, 584 (6th Cir. 2013). As these courts have noted, such a rule is entirely consistent with the line of Supreme Court cases that ultimately spawned the decision in Alleyne . See, e.g., Heard , 561 F. App'x at 876 (quoting United States v. Booker , 543 U.S. 220, 244, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), for the following proposition: "[A]ny fact ... which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty ... must be admitted by the defendant or proved to a jury beyond a reasonable doubt" (alteration omitted) ); Jefferson , 791 F.3d at 1016 (citing Blakely v. Washington , 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and Apprendi v. New Jersey , 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), for proposition that the admission of quantity elements in a plea agreement is sufficient to satisfy quantity element). This court has no doubt that the analysis of this issue set out in the opinions referenced above is correct and we, therefore, adopt it as our own.
In arguing for a different result, Roe asserts his admission to the quantity element in his plea agreement is not conclusive because the indictment charged a quantity related to the entire conspiracy and he is only responsible for the quantity that was within the scope of the agreement and reasonably foreseeable to him. Roe is undoubtedly correct in asserting that to prove him guilty of a conspiracy count with an attached quantity element, the government would have to prove that quantity was either handled by Roe or reasonably *1295 foreseeable by Roe and within the scope of the agreement. See United States v. Dewberry , 790 F.3d 1022, 1029-31 (10th Cir. 2015). By pleading guilty, however, Roe relieved the government of its burden of proving the necessary factual predicate. See United States v. Espinal , 634 F.3d 655, 664 (2d Cir. 2011) ("When the government charges a defendant with a crime, the defendant has a constitutional right to stand mute, and the government is constitutionally required to prove the charge beyond a reasonable doubt-a burden of which it is relieved only if the defendant pleads guilty in a proceeding to which stringent protections are applied. See Fed. R. Crim. P. 11(b) (setting forth procedural requirements for guilty pleas).").[13]
As a final matter, this court notes it is unnecessary to consider and analyze separately any of the various cases cited by Roe in his brief on appeal. Instead, we can state in gross why those decisions are entirely irrelevant. The first chunk of cases relied upon by Roe are irrelevant because they predate the Supreme Court's decision in Alleyne . Prior to Alleyne , facts that increased a defendant's mandatory minimum sentence were treated as sentencing factors to be resolved by the district court. See generally Harris v. United States , 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002). It was only after the Supreme Court overruled Harris in Alleyne that such facts were recognized as elements that must be set out in an indictment *1296 and proved to the jury beyond a reasonable doubt absent the entry of a knowing and voluntary guilty plea. Alleyne , 570 U.S. at 103, 133 S.Ct. 2151. The procedures employed by courts under the Harris regime simply do not speak at all to the question now before this court. The second, and final, group of cases relied on by Roe involve special provisions of the United States Sentencing Guidelines that require particularized findings regarding a defendant's attributable drug quantity for purposes of arriving at a Guidelines sentencing range. It is absolutely clear, however, that the Apprendi line of cases specifically do not apply in the context of the advisory Sentencing Guidelines. See United States v. Sullivan , 255 F.3d 1256, 1265 (10th Cir. 2001) (holding that Apprendi "does not apply to sentencing factors that increase a defendant's guideline range but do not increase the statutory maximum"); see also Alleyne , 570 U.S. at 116-17, 133 S.Ct. 2151. Accordingly, Roe has not cited a single relevant case supporting the notion that a knowing and voluntary guilty plea to a drug conspiracy charge with a concomitant quantity element is not an admission of that element.
The district court correctly ruled Roe's claim that his trial counsel was ineffective for failing to object to the applicability of the twenty-year mandatory minimum sentence fails because his guilty plea establishes the applicability of the mandatory minimum.
B. Failure-to-Consult Claim
1. Legal Background
Pursuant to the provisions of Fed. R. Civ. P. 15(a)(2), a movant may file an amended § 2255 motion at any time during post-conviction proceedings with leave of court.[14] Nevertheless, claims set out in such an amendment only relate back to the date of the original pleading, for purposes of any applicable statute of limitation, when "the amendment asserts a claim ... that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). There is such a statute of limitation at issue in this case. See 28 U.S.C. § 2255(f)(1) (setting out a one-year "period of limitation" applicable to any motion filed under § 2255, which runs from "the date on which the judgment of conviction becomes final"). It is uncontested that absent the applicability of the relation-back doctrine set out in Rule 15(c)(1)(B), Roe's failure-to-consult claim was filed well past the one-year limitation period set out in § 2255(f)(1).
In United States v. Espinoza-Saenz , 235 F.3d 501, 503 (10th Cir. 2000), this court examined for the first time " Rule 15(c) as it relates to a 2255 motion." We adopted a constrained view of the breadth of Rule 15(c) in the context of § 2255 proceedings:
[P]ursuant to Rule 15(c), an untimely amendment to a § 2255 motion which, by way of additional facts, clarifies or amplifies a claim or theory in the original motion may, in the District Court's discretion, relate back to the date of the original motion if and only if the original motion was timely filed and the proposed amendment does not seek to add a new claim or to insert a new theory into the case.
Id. at 505 (quotation and alterations omitted). Such an approach was necessary, according to Espinoza-Saenz , to preserve the functionality of the limitation period set out in § 2255(f). Id.
*1297 The approach adopted in Espinoza-Saenz was not universally embraced in the Circuit Courts of Appeals. For example, the Ninth and Seventh Circuits held that claims set out in an amended post-conviction pleading related back to the original pleading as long as the amended claim arose from the same trial and conviction. Felix v. Mayle , 379 F.3d 612, 615 (9th Cir. 2004) ; Ellzey v. United States , 324 F.3d 521, 525-27 (7th Cir. 2003). In Mayle v. Felix , 545 U.S. 644, 653, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005), the Supreme Court granted certiorari "to resolve the conflict among Courts of Appeals on relation back of habeas petition amendments." Mayle rejected the "capacious" approach of the Ninth and Seventh Circuits in favor of the majority approach, which "allow[s] relation back only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in both time and type from the originally raised episodes." Id. at 657, 125 S.Ct. 2562 (quotation omitted). In so doing, Mayle specifically held that the approach it adopted gave content and meaning to Congress's efforts, as embodied in the relevant limitation period, "to advance the finality of criminal convictions." Id. at 662, 125 S.Ct. 2562.[15]
Mayle also made clear that in analyzing the breadth of the operative language in Rule 15(c)(1)(B), it was necessary to keep in mind the dictates of the Rules Governing Section 2254 Proceedings for the United States District Courts (hereinafter " Section 2254 Rules"). Id. at 655-56, 661, 125 S.Ct. 2562. The Court noted the Section 2254 Rules require petitioners to "plead with particularity" the claims advanced in a habeas petition. Id. at 655-56, 125 S.Ct. 2562 (citing Section 2254 Rule 2(c) and referring to the model form available to habeas petitioners).[16] Then, in analyzing whether the claims set out in the amended petition should relate back to the claims set out in the original petition, Mayle considered whether those claims would have had to be pleaded "discretely" if both brought in the original petition. Id. at 661, 125 S.Ct. 2562. If the answer to that question was "yes," relation back was likely not proper. Id. ("Each separate congeries *1298 of facts supporting the grounds for relief, the Rule suggests, would delineate an 'occurrence.' "); see also Ross v. Williams , 896 F.3d 958, 964 (9th Cir. 2018) ("[F]or purposes of Civil Rule 15(c), an 'occurrence' is an aggregation of facts supporting a discrete claim for relief, and a new claim must arise from the same aggregation of facts set forth in the earlier petition in order to relate back.").
Thus, under the rule set out in Mayle , the operative question for purposes of the applicability of Rule 15(c)(1)(B) 's relation-back provision is whether " 'the original and amended [motions] state claims that are tied to a common core of operative facts.' " United States v. Trent , 884 F.3d 985, 992-93 (10th Cir. 2018) (quoting Mayle , 545 U.S. at 664, 125 S.Ct. 2562 ). In answering that question, this court must focus on whether the new claim is " 'supported by facts that differ in both time and type from those the original [petition] set forth.' " Id. at 992 (quoting Mayle , 545 U.S. at 650, 125 S.Ct. 2562 ). The answer to that question will often turn on whether the newly asserted claim would have had to be pleaded as a discrete claim under Section 2255 Rule 2(b) if it was set out in the original § 2255 motion.
2. Standard of Review
As a general matter, the purely discretionary decision whether to allow amendment of the pleadings is reviewed for abuse of discretion. Espinoza-Saenz , 235 F.3d at 503. When, however, the relation-back question implicates the timeliness of a proposed amendment to a § 2255 motion, review is de novo. Id. ("Under the circumstances here, however, we are reviewing the district court's legal conclusion that it did not have the authority to allow an untimely amendment. Our review requires a decision on an issue of law and thus, is considered by this court de novo.");[17] Trent , 884 F.3d at 992 (reviewing de novo whether a claim in movant's amended § 2255 motion "related back to his original § 2255 motion"). In this case, the district court concluded, based on an analysis of the rule set out in Espinoza-Saenz , that Roe's failure-to-consult claim did not relate back to his failure-to-file claim because it was based on an entirely new theory. Accordingly, this court's review is de novo.
3. Analysis
The district court correctly concluded Roe's failure-to-consult claim does not relate back to his failure-to file claim.[18]
*1299 In explaining this conclusion, it is helpful to start by discussing the types of facts necessary to prove each type of claim. With this background in mind, it becomes clear Roe's failure-to-consult claim relies on an entirely new and distinct aggregation of facts from those set out in his original § 2255 motion in support of the failure-to-file claim. That is, the new claim is "supported by facts that differ in both time and type from those the original petition set forth." Mayle , 545 U.S. at 650, 125 S.Ct. 2562.
The resolution of Roe's failure-to-file claim depends entirely on the answer to the following factual question: did Roe request that trial counsel file a notice of appeal on Roe's behalf? See Roe v. Flores-Ortega , 528 U.S. 470, 477, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) ("[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable.").[19] That is true because counsel's obligation to file a requested notice of appeal is absolute. Id. ("[A] defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes.").
A failure-to-consult claim, on the other hand, is dependent on a significantly more complex and extensive factual milieu. Unlike the absolutist requirement that trial counsel file a notice of appeal when so directed, trial counsel's failure to consult with a defendant regarding the possibility of taking an appeal implicates the Sixth Amendment only if that failure is unreasonable. Id. at 479, 120 S.Ct. 1029 ("We cannot say, as a constitutional matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient."). Trial "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480, 120 S.Ct. 1029. "In making this determination, courts must take into account all the information counsel knew or should have known." Id. Thus, to properly resolve Roe's failure-to-consult claim, the court must examine the entire course of the proceedings to determine what a hypothetical rational defendant would want and, additionally, what Roe's actions reasonably conveyed to his trial counsel. Id.
Roe asserted in his original § 2255 motion that he specifically instructed his trial counsel to file a notice of appeal. The operative facts tied to this claim were limited both by time (Roe's request allegedly occurred on the date of sentencing) and type (trial counsel performed ineffectively by failing to perform the ministerial task of filing a notice of appeal). See id. at 477, 120 S.Ct. 1029. Not surprisingly, the failure-to-consult claim *1300 set out in Roe's supplemental brief relies on an entirely different set of facts that span a time frame over the entire course of trial counsel's representation of Roe. That is, Roe asserts his conduct from the beginning of the representation to the entry of sentence should have reasonably led trial counsel to believe he was interested in taking an appeal.[20] And, in asserting a rational defendant in his position would want to appeal, Roe identified the following allegedly nonfrivolous grounds for appeal: (1) whether the specific state drug crime set out in the government's § 851 information validly triggered an enhanced mandatory minimum; (2) whether there existed a sufficient factual basis for a guilty plea to the Conspiracy Count; and (3) whether the PSR improperly attributed too much cocaine to Roe, improperly making him subject to the enhanced mandatory minimum set out in 21 U.S.C. § 841(b)(1)(A)(ii). These allegedly nonfrivolous issues arise from facts that are both temporally and factually disconnected from the single fact relevant to Roe's failure-to-file claim. For that very reason, there is simply no doubt that if these two claims had been set out in Roe's original § 2255 motion, they would have had to be pleaded discreetly and supported by separate, specific factual averments to comply with the dictates of Section 2255 Rule 2(b).[21] Thus, we have no difficulty concluding Roe's failure-to-consult claim did not arise from a "common core of operative facts" shared with his failure-to-file claims. Fed. R. Civ. P. 15(c)(1)(B). Instead, the failure-to-consult claim arises from a "congeries of facts" entirely different from the alleged fact underlying Roe's failure-to-file claim. Mayle , 545 U.S. at 661, 125 S.Ct. 2562. Accordingly, the district court did not err when it concluded Roe's failure-to-consult claim was untimely.[22]
IV. CONCLUSION
For those reasons set out above, with the specific exception of that part of the district court order addressing Roe's failure-to-consult claim on the merits, see supra n.22, the order of the district court *1301 denying Roe's § 2255 motion is hereby AFFIRMED .

In his brief on appeal, Roe emphasizes additional aspects of the factual background. For instance, he notes the plea agreement contained a thirty-page, single-spaced factual basis spanning 100 paragraphs. Roe also emphasizes that during the hearing on his petition to enter a guilty plea, trial counsel explained Roe's discomfort with the idea of co-conspirator liability. Roe felt it was unfair he was responsible for the actions of co-conspirators who were unknown to him when his part in the conspiracy was, according to him, relatively small. But see United States v. Cherry , 217 F.3d 811, 817 (10th Cir. 2000) ("During the existence of a conspiracy, each member of the conspiracy is legally responsible for the crimes of fellow conspirators.... As stated by the Supreme Court, conspirators are responsible for crimes committed within the scope of the unlawful project and thus reasonably foreseen as a necessary or natural consequence of the unlawful agreement." (quotations omitted) ). Given Roe's concerns, the district court went so far as to recess the hearing on Roe's proposed guilty plea so Roe could further consult with counsel. After the recess, the district court used only a portion of the factual basis attached to the plea agreement (i.e., paragraphs 2, 16, and 38) to establish Roe's guilt.

Consistent with the information in the factual basis for the guilty plea, see supra n.1, the PSR indicated Roe purchased from a co-conspirator and then distributed to others approximately three ounces of cocaine a week over a period of 120 weeks.

Prior to the sentencing hearing, Roe and the government entered into a Post-Conviction Agreement. The parties stipulated to a two-level reduction in Roe's total offense level to account for alterations in the advisory guidelines range which would flow from the contemplated passage of the Fair Sentencing Act. This stipulation resulted in a new advisory Guidelines range of 140 to 175 months' imprisonment.

It is worth noting there is nothing in the record to indicate trial counsel's actions in this regard were unreasonable. The application notes to U.S.S.G. § 5K1.1, the provision of the Sentencing Guidelines that implement 18 U.S.C. § 3553(e), specifically provide that "[s]ubstantial weight should be given to the government's evaluation of the extent of the defendant's assistance." U.S.S.G. § 5K.1 cmt. n.3. At the sentencing hearing, the government noted that prior to filing the § 3553(e) motion, it had already "withdraw[n] the [21 U.S.C. § 851 ] notice that would have subjected [Roe] to life imprisonment." The government went on to note as follows:
So the opportunity to get a 5K really was more of a favor to him than anything. And his brother was kind of a joint thing, you know, we have to sentence his brother. His brother has a very serious criminal history as well. Not quite as bad as ... [Roe] does, but we agreed to let them sit down and be interviewed.
Frankly, none of the information either of them offered was anything that would have been of any benefit to the trial that I've heard, so there was never any likelihood that he was going to be offered as a witness. The information he had was all information that we were well aware of. So this is a pretty, in my mind, generous offer of a 25% reduction which would give him a sentence of 180 months.
That's a very similar sentence, as the Court is aware, to sentences that a number of the other co-defendants in this case likewise received. So we believe it's fair based upon the quantities of drugs that he distributed during the time of his conspiracy.

But see infra n.13 (noting part of factual basis to which Roe pleaded guilty included an assertion he bought multi-ounce quantities of cocaine from a co-conspirator).

Roe's § 2255 motion was executed in the manner set out in 28 U.S.C. § 1746 and, therefore, is treated as an affidavit as to the factual averments set out therein.

Alternatively, the district court determined that, even assuming the plea agreement and colloquy did not supply the necessary factual basis, Roe could not demonstrate prejudice flowing from trial counsel's failure to object because Roe did not show "but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." In that regard, the district court reasoned as follows:
Other than [Roe's] bare assertion of innocence as to any quantity beyond one gram of cocaine, the record does not reflect any viable defense against the charges in [the Conspiracy Count]. As part of the plea, [Roe] acknowledged that he conspired with others to distribute and to possess with intent to distribute 280 grams or more of crack cocaine and five kilograms or more of cocaine. [Roe] understood that absent the plea agreement, which required the government to forego filing a second Section 851 notice, he would have been subject to a statutory minimum of life in prison had he proceeded to trial and a jury found him guilty. In light of the evidence and the significant benefits which [Roe] received under the plea agreement, [he] has not shown how a decision to reject the plea agreement would have been rational under the circumstances. Accordingly, he cannot show prejudice based on counsel's failure to object to the sufficiency of the plea colloquy.
District Ct. Order of May 23, 2016, at 9 (citations and footnote omitted). To be clear, at no point in his § 2255 motion or in the proceedings thereafter did Roe assert a substantive claim of entitlement to relief under Fed. R. Crim. P. 11(b)(3). That is, he never sought to invalidate his plea on the basis that it is not supported by an adequate factual basis; he has, instead, attempted to escape the burden of his guilty plea while maintaining the benefits flowing from the plea agreement. He has sought to do so by relying on outdated and irrelevant case law for the proposition that any quantity listed in an indictment is irrelevant at sentencing and, instead of being bound by such a quantity, the district court has an independent obligation to make a quantity determination for sentencing purposes. As set out below in Section III.A.3. of this opinion, Roe's arguments in this regard are entirely unconvincing.

Any inference arising at the evidentiary hearing that the drug quantities set out in the PSR arose solely from the statements of a single one of Roe's co-conspirators is wholly inconsistent with the record. The PSR notes that Roe came to be known to officers after a confidential informant told them Roe was selling cocaine. The confidential informant indicated he made regular purchases from Roe. Ultimately the confidential informant engaged in a controlled purchase of cocaine from Roe. Two of Roe's co-conspirators proffered, or testified during related proceedings, that Roe regularly purchased distribution quantities of cocaine during the course of the conspiracy.

In his brief on appeal, Roe emphasizes the following testimony elicited from trial counsel at the evidentiary hearing:
(1) Trial counsel admitted he did not know what impact the PSR's drug-quantity findings would have on the mandatory minimum sentence and did not research the subject. Instead, he admitted he told Roe any drug-quantity objection would have no impact on the mandatory minimum sentence.
(2)Trial counsel conceded he did not visit Roe to discuss the PSR. Nor could he remember ever discussing the PSR with Roe over the phone.
(3) Trial counsel confessed that, although Roe had told him he was not responsible for the drug quantities listed in the PSR, he did not object to the drug-quantity findings or try to determine whether the drug quantity was supported by the factual basis for Roe's guilty plea.
As set out more fully below, to the extent Roe attempts to tie this testimony on the part of trial counsel to his drug-quantity claim, the evidence does not bear meaningfully on the claim. A knowing and voluntary guilty plea to an indictment charging a drug conspiracy with an attendant quantity element subjects the defendant to the enhanced statutory penalties associated with that quantity. This is especially true given that Roe has never lodged a substantive, stand-alone challenge to the factual basis of his guilty plea. See supra n.7. Any quantity determinations set out in the PSR, while potentially meaningful for other purposes, have no impact on the applicability of the statutory minimum penalties set out in § 841(b)(1)(A)(ii)-(iii). See U.S.S.G. § 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence."). To the extent this testimony is relevant to the merits of Roe's failure-to-consult claim, it is unnecessary to reach the merits because the claim is untimely.

This testimony can only support the merits of Roe's failure-to-consult claim and is, therefore, irrelevant to the ultimate disposition of this appeal. See supra n.9 (noting such evidence is irrelevant because Roe's failure-to-consult claim is untimely). It is, however, worth noting that in the extensive recitation of Roe's criminal history set out in the PSR there is included at least two Kansas state felony convictions for possession of cocaine in which Roe received an actual sentence of more than twelve months' imprisonment. There is simply no doubt the government could have made good on its threat to file a second § 851 notice, and thereby subject Roe to a mandatory minimum life sentence, should he not enter into a mutually acceptable plea agreement. It was for this very reason, along with a concern about the government deciding against the filing of a § 3553(e) motion, see supra n.4, that trial counsel reasoned it was unnecessary to challenge the adequacy of the state conviction underlying the government's § 851 information:
[Appointed Counsel]. Did you do any research into whether this particular conviction would qualify as a federal felony?
[Trial Counsel]. I did not.
[Appointed Counsel]. You just relied on the government's representation?
[Trial Counsel] No, ma'am. There was more than one, so ...
[Appointed Counsel]. Okay.
[Trial Counsel]. I mean, I suppose if-if-and I believe there were three or four.
[Appointed Counsel]. All right.
....
[Trial Counsel]. So under the idea if-if I missed something and I could have avoided this one, I guess they would have filed the next.... And so I would have again prolonged the inevitable and then also damaged our ability to get the [§ 3553(e) motion], which I felt was kind of being given to us rather than something we necessarily earned.

The district court also concluded that even assuming Roe's guilty plea, standing alone, did not establish the applicability of § 841(b)(1)(A)(ii), trial counsel's failure to object did not prejudice Roe because Roe failed to show that but for counsel's alleged deficient performance he would not have agreed to plead guilty. Because this court holds that the district court correctly determined trial counsel's performance was not deficient, it is unnecessary to address the question of prejudice.

Roe recognizes that if this question is answered in the affirmative, the remainder of his arguments are legally irrelevant. See Appellant's Br. at 23 ("If the [district] court had properly recognized that Mr. [Roe's] guilty plea alone could not subject him to a mandatory-minimum sentence, it would have realized that it lacked any evidence that would trigger such a sentence."). There is no doubt Roe's concession in this regard is correct. If Roe's guilty plea to the Conspiracy Count, standing alone, establishes the applicability of the mandatory minimum sentence set out in § 841(b)(1)(A)(ii), the adequacy of the factual basis underlying that guilty plea is only relevant if Roe is challenging the validity of the plea. He has made no such challenge. See supra n.7. Furthermore, as noted by the district court in its order denying Roe relief, because Roe's sentence was based exclusively on the statutory mandatory minimum, the quantity calculations set out in the PSR are ultimately irrelevant.

Nor, having closely examined the entire record in this case, is there even the remotest reason to doubt that Roe's guilty plea was entered at a proceeding which complied with the dictates of Fed. R. Crim. P. 11(b). Although Roe raised a cursory challenge to the voluntary nature of his guilty plea in his original § 2255 motion, the district court rejected the claim on the merits. Roe did not seek a certificate of appealability to be allowed to raise the issue on appeal. Furthermore, Roe's Petition to Enter Plea of Guilty specifically stated trial counsel informed Roe he was facing a mandatory minimum sentence of no less than twenty years and a maximum punishment of life imprisonment. Finally, as a matter of sound strategy, Roe has never asserted a substantive claim that his guilty plea is not supported by an adequate factual basis. See supra nn.7, 12. Although Roe's litigation approach is clearly driven by a desire to keep the substantial benefits he obtained under the plea, the failure to raise such a claim is also entirely consistent with the record. Paragraph 2 of the factual basis specifically provided that "[over] the course of the conspiracy, conspirators distributed 280 grams or more of [crack] ... and distributed 5 kilograms or more of cocaine from January 2009 through May 31, 2012." Paragraph 16 stated Roe bought "multi-ounce quantities of cocaine" from a co-conspirator. The clear import of this paragraph is that these multi-ounce purchases took place over the course of the conspiracy. This interpretation of Paragraph 16 is strongly supported by Roe's Petition to Enter Plea of Guilty, which provides as follows:
I know that the Court must be satisfied that there is a factual basis for a plea of "GUILTY" before my plea can be accepted. I represent to the Court that I did the following acts in connection with the charges made against me in ... [the Conspiracy Count]: I sold drugs. Selling those drugs helped the chain of drug buying and selling that forms a conspiracy for the purposes of this crime.
Finally, paragraph 38 notes a confidential informant purchased a one-gram quantity of cocaine from Roe, which cocaine was initially supplied to Roe by a co-conspirator. In addition, the government informed the court it was ready and able to prove beyond a reasonable doubt all the facts set out in the entirety of the 100-paragraph factual basis and, thereby, demonstrate to a jury "the essential elements of this conspiracy statute under which [Roe] was charged." Furthermore, the PSR, which was specifically adopted by the district court at the conclusion of the sentencing hearing, provided evidence from multiple sources that Roe personally handled more than ten kilograms of cocaine. See supra n.2 & accompanying text. At this late date in the game, it is appropriate to consider the information in the PSR in analyzing the adequacy of the plea agreement's factual basis. United States v. Carillo , 860 F.3d 1293, 1305 (10th Cir. 2017).

Fed. R. Civ. P. 15 is made applicable to § 2255 proceedings by the following provisions of law: 28 U.S.C. § 2242, Fed. R. Civ. P. 81(a)(4), and Rule 12 of the Rules Governing Section 2255 Proceedings for the United States District Courts (hereinafter "Section 2255 Rules").

To be clear, the limitation period at issue in Mayle is the one applicable to habeas proceedings brought under 28 U.S.C. § 2254. Mayle v. Felix , 545 U.S. 644, 662, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005) (citing 28 U.S.C. § 2244(d)(1)(A) ). Because this matter also implicates Congress's desire to advance finality, there is no meaningful distinction between the limitation period at issue in Mayle , § 2244(d)(1)(A), and the limitation period at issue here, § 2255(f)(1).

Section 2255 Rule 2(b) likewise requires that a § 2255 motion "specify all the grounds for relief available to the moving party" and "state the facts supporting each ground." As is true of the model form set out as an appendix to the Section 2254 Rules, the model form set out as an appendix to the Section 2255 Rules specifically provides that a movant "must include in this motion all the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this Motion, you may be barred from presenting additional grounds at a later date." Furthermore, the particularity requirement that animated the Supreme Court's analysis in Mayle , 545 U.S. at 655-66, 125 S.Ct. 2562, also animates the Section 2255 Rules. As already noted, Section 2255 Rule 2(b) requires the pleading of grounds for relief and necessary supporting facts with particularity. Section 2255 Rules 4 and 5, taken together, require a preliminary review of the motion by the district court, an answer to the motion only if that preliminary review demonstrates the movant is potentially entitled to relief, and an answer to the motion that focuses solely on the allegations in the motion. Thus, in interpreting the breadth of application of Fed. R. Civ. P. 15(c)(1) in the context of § 2255 proceedings, this court must read the rule in a way that incentivizes movants to plead with particularity their claims and the facts supporting those claims.

In United States v. Espinoza-Saenz , 235 F.3d 501, 503 (10th Cir. 2000), the district court concluded the movant's "supplemental motion to be barred by the AEDPA's one-year statute of limitations and ... transferr[ed] it to this court as a second or successive" motion.

In his opening brief on appeal, Roe specifically tied the question of relation back to whether his failure-to-consult claim related back to his failure-to-file claim. In its entirety, Roe's brief argues as follows:
Mr. [Roe's] failure-to-consult claim did relate back to the operative facts in his original § 2255 motion. There, he alleged that his attorney was ineffective because he told his attorney to file an appeal but the attorney failed to do so. In the amended claim, he alleged that his attorney was ineffective for failing to consult with him about an appeal. These claims are tied to the same set of operative facts: the discussions, or lack thereof, between Mr. [Roe] and his attorney about an appeal.
Appellant's Br. at 34. In his reply brief, however, Roe completely changes tack. He criticizes the government for focusing exclusively on his failure-to-file claim, to the exclusion of other claims in his original § 2255 motion:
But the law is not so narrow. The applicable standard does not focus on the facts underlying a single claim within the original petition but the facts that gave rise to all of the claims in the original petition. And again, as Mr. [Roe] pointed out in his reply brief [in support of his request for a certificate of appealability], the facts underlying the claims in his original petition were of the same time and type as those supporting his failure-to-consult claim.
Appellant's Reply Br. at 18 (citations omitted). This court does not "consider arguments raised for the first time in a reply brief." United States v. Mora , 293 F.3d 1213, 1216 (10th Cir. 2002). Accordingly, in analyzing this issue, we focus exclusively on whether Roe's failure-to-consult claim relates back to his failure-to-file claim.

In such situations, prejudice is presumed because counsel's unreasonable performance leads to the denial of an entire judicial proceeding. Roe v. Flores-Ortega , 528 U.S. 470, 483, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000).

Roe's motion to amend asserts as follows:
From the outset, Mr. [Roe] doubted his guilt in the conspiracy, particularly on the scope of the conspiracy, the amount element in the charge, and the relevant conduct. He sent letters to his counsel with a remarkably accurate assessment of the law. He objected during his plea. Counsel's letters to Mr. [Roe] urge him to abandon objections so as not to "pok[e] the bear." And he expressed resistance to the relevant conduct at the sentencing, noting that he had never seen these amounts and that some drugs were for personal use.

This court specifically notes that the relevant rules impose no impediment to a movant's ability to plead alternative and inconsistent claims. Indeed, Fed. R. Civ. P. 8(d) specifically allows for the pleading of inconsistent claims and inconsistent facts. Smith v. Cashland, Inc. , 193 F.3d 1158, 1161 (10th Cir. 1999).

As this court made clear in Espinoza-Saenz , 235 F.3d at 503-05, and United States v. Trent , 884 F.3d 985, 994 (10th Cir. 2018), when a proposed amended § 2255 motion presents an untimely claim, that amended claim is treated as a second or successive habeas petition and the district court lacks jurisdiction to consider it on the merits. For that very reason, when a district court determines a claim in the proposed amended § 2255 motion is untimely, it must dismiss the claim without addressing the merits. See Trent , 884 F.3d at 994 ; see also Steel Co. v. Citizens for a Better Env't , 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (rejecting doctrine of "hypothetical jurisdiction," once embraced by some courts of appeals as a way to avoid difficult jurisdictional questions when the merits could be more easily resolved). Accordingly, this court vacates that narrow portion of the district court's order of March 24, 2017, concluding, in the alternative, that even if Roe's failure-to-consult claim was timely, it would fail on the merits.